UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MUSCO PROPANE, LLP, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:10-cv-1400 (JCH) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF WOLCOTT, et al. | : | JULY 28, 2011 |
|     Defendants. | : | |

**RULING RE: MOTION TO DISMISS (DOC. NO. 33)**

**I.   INTRODUCTION**

Musco Propane, LLP, has filed an Amended Complaint alleging violations of its constitutional rights by the Town of Wolcott, its mayor, and its zoning authorities. Through a series of zoning applications, Musco sought permission to expand its propane storage capacity on its property in the Town of Wolcott. These applications were denied, and Musco was ordered to cease and desist from any non-retail sales of propane from its existing storage tanks on the property. Musco has filed state court actions for review of these decisions.

In the Amended Complaint, Musco names the Town, the Town's Planning and Zoning Commission (PZC), and the Town's Zoning Board of Appeals (ZBA) as defendants. Musco also names numerous individual defendants, each of whom is sued in his or her official and individual capacities. These individuals are the Town's Mayor, Thomas Dunn; the Town's Zoning Enforcement Officer (ZEO), David Kalinowski; five individual members of the PZC in 2009 and 2010; and four individual members of the ZBA in 2009 and 2010. Musco claims that each of these defendants violated Musco's Fourteenth Amendment rights to equal protection and to due process of law and

1

retaliated against Musco in violation of Musco's First Amendment right to freedom of speech.

Pending before the court is the defendants' Motion to Dismiss. Defendants argue that the allegations are insufficient to establish that any violation of Musco's rights occurred, and that each of the individual defendants is entitled to immunity. Because the court finds that each of Musco's claims is insufficiently pled, the defendants' Motion to Dismiss is granted, and the court declines to reach the immunity defenses. Musco is given leave to replead its Equal Protection and First Amendment claims, and the immunity defenses may be re-raised if Musco chooses to do so.

## II. LEGAL STANDARD

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show he is entitled to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'"). The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (2009) (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard. Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008). The plausibility standard does not "require[] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8." Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)"). However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief. As the Iqbal court explained, this pleading standard

> does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Iqbal, 129 S. Ct. at 1949 (citations and internal quotations omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at 213 (citation omitted); accord Arista Records, 604 F.3d at 120.

3

## III. BACKGROUND

The following facts are based on the allegations of the Amended Complaint and are taken as true for purposes of the present Motion. Musco is a licensed home heating fuel dealer and special fuel distributor located in the Town of Wolcott. In 2006, Musco received approval from the PZC and a zoning permit to install a 30,000 gallon above-ground propane storage tank on its property. Neither the approval nor the permit expressly limits the use of this tank to retail sales. Musco installed the tank and began distributing propane to customers, including other propane dealers and commercial customers who re-sell propane in smaller quantities.

In the Spring of 2009, Musco sought approval to install a second 30,000 gallon above-ground propane tank. After negotiating with Town officials, making modifications to its proposed plan, and receiving assurances that the plan would be approved, Musco was informed that its application would be denied "based upon a 'recently discovered' zoning regulation prohibiting fuel storage tanks in excess of 10,000 gallons . . . ." Am. Comp. ¶ 50; see Wolcott Zoning Regulation § 23.2.4. The Town informed Musco that the approval of the first tank had been granted in error. Musco withdrew its application for the second, 30,000 gallon tank in order to study its options.

Following withdrawal of its application, Musco had conversations with the ZEO about a number of possible proposals. The ZEO acknowledged that other businesses were in violation of this Regulation and that the Town had not enforced the Regulation in the past, but that the Town would likely enforce the Regulation against Musco's further expansion. The ZEO reportedly told a former PZC member that the decision to enforce the Regulation was not the ZEO's own decision, but was "a result of a directive

4

issued by Mayor Dunn to prevent any further expansion by Musco." Am. Comp. ¶ 57. The ZEO suggested to Musco that the zoning regulations did not limit the number of 10,000 gallon tanks that could be installed.

In December 2009, at the ZEO's suggestion, Musco submitted a preliminary request for a general amendment to the zoning regulations that would permit fuel storage tanks up to 30,000 gallons. Musco did not receive a response from the Town on that preliminary request. In January 2010, Musco submitted three applications: a formal application to amend the zoning regulations to permit 30,000 gallon tanks (the "Text Amendment Application"); an application for installation of a second 30,000 gallon tank on its property (the "30K Tank Application"); and an alternative site plan application for the installation of four 10,000 gallon tanks on its property (the "10K Tanks Application").

The 30K Tank Application and the Text Amendment Application were denied by the PZC at its February 3, 2010 meeting. The PZC accepted the 10K Tanks Application for further review. Musco alleges that the outcome of the 30K Tank Application and the Text Amendment Application were pre-determined by Mayor Dunn. Musco alleges that Mayor Dunn exercised "his powerful influence over the board members," Am. Comp. ¶ 71, by sending a letter to the PZC indicating that the applications should not be granted and that the PZC should "'be very careful' not to make it look like the outcome was pre-determined," id. ¶ 69.

At the next PZC meeting, on February 17, 2010, Musco indicated that, in order to satisfy the concerns of the ZEO and the Town's Inlands/Wetlands Watercourses Commission, Musco would modify its 10K Tanks Application to seek permission to

5

install three tanks instead of four.  The PZC also received a letter from the former Town Planner acknowledging that multiple 10,000 gallon tanks were not prohibited by the zoning regulations.  On February 26, 2010, Musco appealed the PZC's decision to deny the 30K Tank and Text Amendment Applications.

"During this time," Am. Comp. ¶ 76, members of the PZC began to question whether Musco was acting as a wholesale distributor of propane and whether such activity was a permissible use of Musco's existing 30,000 gallon tank.  The PZC indicated that if Musco intended to continue wholesaling, the 10K Tank application would be denied.  The PZC directed the ZEO to investigate the matter, and the PZC scheduled a hearing on the 10K Tank Application for April 7, 2010.  On March 22, 2010, the ZEO issued a cease and desist order (the "Cease and Desist") directing Musco to stop all wholesale propane sales.  Musco filed for review of the Cease and Desist by the ZBA.

At the hearing on the 10K Tanks Application, Musco argued that it was not a wholesaler, that the 2006 approval and permit for its existing tank did not limit its sales to any particular type of customer, and that the zoning regulations permitted multiple 10,000 gallon tanks.  On May 19, 2010, the PZC voted to deny the 10K Tanks Application.  Musco appealed this decision to the Connecticut Superior Court.

At the ZBA's public hearing on the Cease and Desist, held on June 9, 2010, Musco again argued that it was not a wholesaler and that the approval for its existing tank did not limit its sales to any particular type of customer.  Musco also argued that the Town had been aware of its sales to other propane dealers since 2006.  On July 28, 2010, the ZBA's counsel submitted an advisory letter stating that the zoning regulations

6

did not prohibit wholesale fuel distribution in the zone at issue. On August 9, 2010, the ZBA voted to uphold the Cease and Desist.

## IV. DISCUSSION

Defendants' arguments for dismissal can be organized into two groups: (a) arguments that the allegations are insufficient to show any violation of Musco's constitutional rights, and (b) arguments based on the immunity of particular individual defendants. Because the first category of arguments warrants dismissal of each claim, the court declines to reach the individual immunity arguments.

### A. Count One: Equal Protection

In Count One, Musco claims to have been singled out for different treatment than other similarly situated landowners without any rational basis. Musco claims to have been treated as a "class of one" in violation of the Equal Protection Clause of the Fourteenth Amendment. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (recognizing that equal protection claims may be "brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").

Musco faces a demanding standard for pleading a class-of-one claim:

> [C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

7

Ruston v. Town Board of Skaneateles, 610 F.3d 55, 59-60 (2d Cir. 2010) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)). In Ruston, the Second Circuit affirmed dismissal of class-of-one claims in a zoning dispute against a Town and a Village because the plaintiff had failed to plead "specific examples of Town proceedings, let alone applications that were made by persons similarly situated," id. at 59, and because the comparative examples of Village proceedings were not sufficiently similar, id. at 59-60. Thus, to survive a motion to dismiss, a class-of-one claim must plead specific examples of similarly situated persons who have been treated differently, and such pleadings must plausibly support a conclusion that the examples and the plaintiff's circumstances bear "an extremely high degree of similarity," id. at 59.

The Amended Complaint does not meet this standard. In one paragraph, Musco names two allegedly similar landowners, but the Amended Complaint provides no details explaining how they are similar. Am. Comp. ¶ 123(b). These allegations do not sufficiently plead facts supporting a class-of-one claim. See Ruston, 610 F.3d at 59-60. Therefore, Musco's equal protection claim is dismissed. However, because the Amended Complaint indicates that there are specific examples that might support a class-of-one claim if pled in greater detail, Musco is granted leave to replead this claim.

### B. Count Two: Due Process

To prevail on a claim for violation of due process in the land use context, a plaintiff must show that (1) he or she "had a valid property interest," and (2) the "defendants infringed on that property right in an arbitrary or irrational manner." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007); see Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 503 (2d Cir. 2001). In determining

whether a plaintiff has stated a claim for violation of federal substantive due process, the court is mindful that the Fourteenth Amendment is not a "font of tort law." Pena v. Deprisco, 432 F.3d 98, 112 (2d Cir. 2005) (quoting Lewis v. City of Sacramento, 523 U.S. 833, 848 (1998)). "It does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." Pena, 432 F.3d at 112. "[F]ederal courts should not become zoning boards of appeal to review nonconstitutional land[-]use determinations by the [C]ircuit's many local legislative and administrative agencies." Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996) (quoting Zahra v. Town of Southold, 48 F.3d 674, 679-80 (2d Cir.1995)); see Harlen Associates, 273 F.3d at 505.

1. Protected Property Interest

Musco's substantive due process claim is based on (a) the denial of the Text Amendment Application, the 30K Tank Application, and the 10K Tanks Application; and (b) the Cease and Desist limiting Musco's use of the existing 30,000 gallon tank.

Musco lacks a sufficient property interest in the three denied applications to support a due process claim. "It is well settled in this Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner." Gagliardi v. Village of Pawling, 18 F.3d 188, 192 (2d Cir. 1994). Where a due process claim is based on the denial of a zoning application, the plaintiff must show a "legitimate claim of entitlement" to the benefit sought in that application. Id. (quotation omitted).

> If federal courts are not to become zoning boards of appeals (and not to substitute for state courts in their state law review of local land-use regulatory decisions), the entitlement test

> . . .–'certainty or a very strong likelihood' of issuance—must
> be applied with considerable rigor. Application of the test
> must focus primarily on the degree of discretion enjoyed by
> the issuing authority, not the estimated probability that the
> authority will act favorably in a particular case.

RRI Realty Corp. v. Village of Southampton, 870 F.2d 911, 918 (2d Cir. 1989). Even if the actual reasons for denying the application might have been arbitrary, "[t]he fact that the permit could have been denied on non-arbitrary grounds defeats the federal due process claim." Id. The pleadings and the Town's zoning regulations indicate that Musco lacks a claim of entitlement to the benefits sought by the three denied applications.[1]

First, Musco was not entitled to the benefit sought by the Text Amendment Application. Musco's argument to the contrary depends on the unsupported and highly implausible premise that the PZC is required to adopt any procedurally proper request for amendment to the zoning code. See Opp. at 19-20. This premise would make the zoning regulations subject to the whims and desires of any individual who cares to submit an application. Contrary to Musco's position, the Town's zoning regulations indicate that the PZC is required only to "consider" procedurally proper petitions to amend the regulations. See Z.R. § 53.3; see also id. § 53.2 ("Prior to consideration of any such petition, the following requirements shall be met and the following information submitted." (emphasis added)). "Consideration" of a petition would be unnecessary if the PZC was merely a rubber stamp, bound to adopt any proposed amendment. Thus, the regulations support the more plausible view that the PZC has discretion to adopt or

---

[1] Both parties have submitted the pertinent excerpts of the zoning regulations. There is no dispute as to the text of these regulations.

reject proposed amendments to the zoning code.  Musco has no claim of entitlement to the adoption of its Text Amendment Application.

Further, Musco lacks any entitlement to an affirmative decision on its 30K Tank Application.  The regulations make clear that any application for a 30,000 gallon tank ought to be denied.  See Z.R. § 23.2.4 ("[T]he following uses . . . are specifically and expressly prohibited in any zoning district within the Town of Wolcott: . . . bulk storage of gas, petroleum products and other fuels in tanks having a capacity in excess of 10,000 gallons.").  The fact that Musco had, in the past, been granted permission to have a 30,000 gallon tank certainly does not show that the PZC was required to ignore this Regulation and grant permission to install an additional 30,000 gallon tank.

With regard to the 10K Tanks Application, Musco contends that the installation of three additional 10,000 gallon tanks is permitted by the zoning code.  Schedule A, line C-17, of the Zoning Regulations indicates that "[r]etail sale and distribution of heating fuel and natural gas, specifically excluding storage tanks having a capacity in excess of 10,000 gallons," are permitted, subject to a site development plan, in the pertinent zone.[2]  Musco claims that, as a permitted use, defendants had discretion to require conditions on or modifications to the required site development proposal, but not to deny the application altogether.  See Opp. at 17-18.  However, the Zoning Regulations make clear that the PZC had discretion to "approve, modify and approve, or deny" the required site development plan, see Z.R. § 31.5.5(b), and that such denial prevents issuance of a permit, see Z.R. § 31.3.2 ("In all instances where these Regulations

---

[2] The court grants, for the sake of argument, Musco's view that the 10,000 gallon limit applies to each tank, and not to the total storage on the site.

11

require approval of a Site Development Plan, no Zoning Permit shall be issued . . . except after Site Development Plan review by and authorization of the Commission."). Thus, the PZC had discretion to deny the 10K Tanks Application and to refuse to permit the installation of this additional 30,000 gallons of storage capacity on Musco's property. Musco has not plausibly alleged a certainty or strong likelihood that the application would be granted.

As for the Cease and Desist order limiting Musco's use of its existing 30,000 gallon tank, defendants argue that the ZBA has "liberal discretion" in applying the zoning regulations. See Spero v. Zoning Board of Appeals of Town of Guilford, 217 Conn. 435, 440 (1991). However, there are limits to that discretion. See id. (noting that a ZBA decision may be overturned where it is "unreasonable, arbitrary or illegal"). Here, the question of whether the decision to affirm the Cease and Desist was within the scope of the ZBA's discretion might depend not only on the zoning regulations themselves, but also on the express and implied terms of the authorization previously given to Musco to use the existing tank. That is an issue that might be more appropriately addressed in the state court action for review of the ZBA's decision, than on the limited record before this court on defendants' Motion to Dismiss. However, as explained in the following subsection, there is an alternative, adequate basis for dismissing the due process claim insofar as it relates to the Cease and Desist. Therefore, the court declines to decide whether Musco had a protected property right in the unfettered use of its existing tank.

    2.    <u>Arbitrary Deprivation of the Property Right</u>

To establish the second element of a substantive due process violation, Musco

"must show that the [defendant's] alleged acts against their land were 'arbitrary,' 'conscience-shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'" Ferran v. Town of Nassau, 471 F.3d 363, 369-70 (2d Cir. 2006) (citation omitted).  The Due Process Clause "does not forbid governmental action that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action.  Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999).  "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level" and therefore support a substantive due process claim.  Lewis, 523 U.S. at 849.

The allegations of the Amended Complaint do not support a plausible claim of outrageously arbitrary conduct or a gross abuse of authority.  At points, Musco alleges that the rejection of its applications and the issuance and affirmation of the Cease and Desist were each "illegal, arbitrary and capricious," Am. Comp. ¶¶ 124-127, but these allegations are conclusory.  At other points, Musco makes more specific allegations that the defendants ignored evidence, declined to hold hearings on the 30K Tank and Text Amendment Applications, and made decisions that are unsupported by the law.  See id. ¶¶ 75, 103-04, 115-17.  These allegations are insufficient to distinguish the defendants' actions from the normal sort of erroneous decisions that are "correctable in a state court lawsuit seeking review of administrative action."  Natale, 170 F.3d at 263.  Musco has filed state court actions, and those actions are the appropriate forum for review of these allegedly erroneous zoning decisions.

Musco also alleges that, at one hearing, the PZC Chairman took various specific actions which Musco claims to be "wrongful" and demonstrative of "personal prejudice," thereby making a fair and impartial hearing "impossible." Am. Comp. ¶ 97. However, the description of these actions fails to show that they are in any way indicative of an unfair process. For example, Musco alleges that the Chairman "criticiz[ed] Musco about the existing parking of its trucks at the site and their proximity to the property line;" "criticiz[ed] Musco's design consultant, a licensed engineer and land surveyor, about the accuracy of his drawings;" and "research[ed] the definition of 'wholesale' from [a dictionary] . . . and conclud[ed] based on that definition, Musco was a 'wholesaler' of propane." Id. Criticism of a party's submissions and reference to definitions of key terms are routine and often essential steps toward reaching a fair and appropriate decision in any adjudication. Certain of the alleged actions might be less routine—e.g., that the Chairman made an independent site visit, see id.—but Musco has not provided any support for the view that these actions rise to a level that is outrageously arbitrary.

In sum, the allegations of the Amended Complaint fail to show that Musco has a plausible claim for violation of the Due Process Clause of the Fourteenth Amendment. Therefore, the due process claim is dismissed.

### C. Count Three: First Amendment Retaliation

In the Third Count of the Amended Complaint, Musco alleges that the defendants took a number of actions against Musco in retaliation for Musco's decision to appeal certain of their earlier zoning decisions. "To establish a retaliation claim under § 1983 in this case, [a plaintiff] must show that (1) his conduct was protected by the First Amendment, and (2) such conduct prompted or substantially caused defendant's

action." Dougherty v. Town of North Hempstead Board of Zoning, 282 F.3d 83, 91 (2d Cir. 2002) (citations omitted). There is no question that the first element is met here. See Gagliardi, 18 F.3d at 194 ("The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment."). The only dispute is with respect to the second element.

The Second Circuit has held that "[t]he ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint. It is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Dougherty 282 F.3d at 91; see Gagliardi, 18 F.3d at 195. Although defendants rely on Dougherty and Gagliardi in their Memorandum, defendants assert in their Reply that this aspect of these cases has been undercut by the pleading standard established in Iqbal and Twombly. Defendants cite no authority for this claim. At least one court has relied on this pleading standard after both Twombly and Iqbal were decided. See Puckett v. City of Glen Cove, 631 F. Supp. 2d 226, 241 (E.D.N.Y. 2009). Moreover, although these cases hold that retaliatory intent may be pled through circumstances supporting an inference, they also all indicate that such circumstances must be pled in adequate detail. See Dougherty, 282 F.3d at 92 ("He also alleges that the entire chronology of events spanning a period of over five years displays a pattern of egregious treatment by the Board. . . . We therefore conclude that Dougherty's proposed amended complaint adequately sets forth specific facts, which if proven, can support a finding of retaliatory motive."); Gagliardi, 18 F.3d at 195 ("These detailed allegations provide a chronology of events from which an inference [of retaliatory intent] can be drawn . . . ."). Therefore, the court finds no inconsistency between these cases

15

and the pleading standard established in Iqbal and Twombly.

Here, Musco has pled that the Town's zoning authorities did nothing to enforce any regulation against Musco's sales to other propane dealers until 2010, despite knowing that Musco was making such sales since 2006. On February 26, 2010, Musco filed a state court action for review of the PZC's rejection of the Text Amendment Application and the 30K Tank Application. Musco alleges that, "[d]uring this time, members of the PZC began inquiring about Musco's existing customer base and whether or not it was acting as a 'wholesale' distributor . . . ," Am. Comp. ¶ 76, and that "[t]hey then directed the ZEO to investigate the matter and take enforcement action," id. ¶ 81. On March 22, 2010, the ZEO issued the Cease and Desist, directing Musco to stop wholesaling propane. Subsequently, the PZC denied the 10K Tanks Application, and the ZBA affirmed the Cease and Desist.

These allegations are insufficient. First, although Musco alleges that the Cease and Desist issued after Musco's first appeal, the Amended Complaint is problematically vague about the timing of the inquiry that lead to that Cease and Desist. The Amended Complaint does not make clear when the PZC directed the ZEO to investigate the matter and take enforcement action. See Am. Comp. ¶¶ 76, 81. The allegation that the PZC began to inquire into Musco's customer base "during this time," suggests that the PZC did so at some unspecified point, perhaps between January 2010 and March 22, 2010. An inference of retaliatory intent would be unsupported if the PZC directed the ZEO to take action before Musco appealed on February 26, 2010 or, if earlier, indicated its intent to do so. Without support for the view that the Cease and Desist was retaliatory, the other subsequent actions taken by Town authorities—i.e., the denial of

the 10K Tanks Application and the ZBA's affirmation of the Cease and Desist—appear to be part of a continuing series of zoning decisions that began before Musco's first appeal.

Second, Musco is unable to draw support from the chronology of events prior to its appeal. The Amended Complaint indicates that the Town's zoning authorities began enforcing previously unenforced zoning regulations against Musco in 2009, well before Musco took any appeal. See Am. Comp. ¶¶ 50, 56. Indeed, Musco's first appeal concerned the Town's decision to enforce, for the first time, the regulation barring tanks in excess of 10,000 gallons. While it is possible that the defendants took the <u>additional</u> step of issuing the Cease and Desist in retaliation for the appeal, the defendants' pre-appeal actions are at least as indicative of a general effort to enforce the zoning regulations against Musco, regardless of any First Amendment activity by Musco. Therefore, Musco has not supplied "detailed allegations provid[ing] a chronology of events" from which an inference of retaliatory intent can plausibly be drawn. <u>Gagliardi</u>, 18 F.3d at 195; <u>see</u> <u>Dougherty</u>, 282 F.3d at 92.

The First Amendment retaliation claim is dismissed. However, because the problem with these allegations might be addressed by more specific pleadings as to the timing of the inquiry into Musco's sales, Musco is given leave to replead this claim.

**D.    Immunity Defenses**

Because each of the claims in the Amended Complaint is dismissed as insufficiently pled, the court will not consider the immunity defenses asserted on behalf of the individual defendants at this time. Musco may choose to replead its Equal Protection and First Amendment claims. More specific pleadings may alter the court's

assessment of whether or not the individual defendants are entitled to qualified immunity. Thus, it would be more appropriate to consider the immunity defenses in light of any such amended pleadings or in light of a more fully developed factual record.

## V. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss (Doc. No. 33) is **granted**. Musco is given twenty-one days to file a second amended complaint consistent with this Ruling.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 28th day of July, 2011.

                                                    /s/ Janet C. Hall
                                                  Janet C. Hall
                                                  United States District Judge