UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MUSCO PROPANE, LLP | : | CIVIL ACTION NO. |
| | : | 3:10 CV-01400-JCH |
| | : | |
| V. | : | |
| | : | |
| TOWN OF WOLCOTT, ET AL | : | APRIL 1, 2011 |

## PLAINTIFF'S DISCLOSURE OF EXPERT WITNESS

Pursuant to Fed. R. Civ. P. 26(a)(2)(A), the plaintiff, Musco Propane, LLP,

discloses the following expert witness who will present evidence at trial under Federal

Rule of Evidence 702, 703 or 705:

> Joseph A. DeCusati, CPA, ASA, CFE
> Meyers, Harrison & Pia, LLC
> One Audubon Street, 3rd Floor
> New Haven, CT 06511

A copy of Mr. DeCusati's expert report is attached hereto as Exhibit A pursuant

to Fed. R. Civ. P. 26(a)(2)(B).  The amount of Mr. DeCusati's compensation in this case

if $275.00/hour.

> THE PLAINTIFF
> MUSCO PROPANE, LLP
>
>
> By: _____
> Melissa A. Scozzafava
> Federal Bar No.: CT23560
> Yamin & Grant, LLC
> 83 Bank Street
> Waterbury, CT 06702
> Phone: (203) 574-5175
> Fax No.: (203) 573-1131
> mscozzafava@yamingrant.com

## CERTIFICATION

I hereby certify that a true copy of the foregoing has been sent, postage prepaid,

this 1st day of April, 2011 to the following counsel of record:

Melinda A. Powell, Esq.
Rose Kallor, LLP
750 Main Street
Hartford, CT 06103

Melissa A. Scozzafava
Commissioner of the Superior Court

# EXHIBIT A

DAMAGE DETERMINATION ANALYSIS
PREPARED IN RELATION TO THE CASE OF

MUSCO PROPANE, LLP
v.
TOWN OF WOLCOTT, ET AL

CIVIL ACTION NO.: 3:10 CV-01400-JCH

*United States District Court
For the District of Connecticut*

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431



MEYERS, HARRISON & PIA, LLC
*Certified Public Accountants and Consultants*

One Audubon Street, 3rd Floor • New Haven, CT 06511-6431 • Tel (203) 789-1040 • Fax (203) 789-4455

March 31, 2011

Eric M. Grant, Esq.
Yamin & Grant, LLC
83 Bank Street
Waterbury, CT 06702

Re:   **Musco Propane, LLP v. Town of Wolcott, et al**

Dear Attorney Grant:

Pursuant to the terms of our engagement, you have requested our opinion as to the present value of the damages allegedly incurred by Musco Propane, LLP (the "Plaintiff" or "Musco"), at or near December 31, 2011, pursuant to the allegations set forth in the complaint between Musco Propane, LLP v. Town of Wolcott, et al (collectively, the "Defendants") pending in United States District Court for the District of Connecticut, Civil Action No. 3:10 CV-01400-JCH.

**Description of the Assignment**

Meyers, Harrison & Pia, LLC has been engaged to estimate the present value of the damages allegedly incurred by the Plaintiff. We understand that the purpose of this analysis is to establish the appropriate present value of damages based on the allegations set forth in the claim made by the Plaintiff in this case should the allegations be found to be true.

As part of this assignment, we considered the information outlined in Appendix B. Discussions and/or communications were held with management of Musco and their attorneys. We also met with management of Musco on March 21, 2011 at its business location in Wolcott, Connecticut. This information assisted us in developing an understanding of the economic relationship between the parties, the financial implications of the Defendant's actions based on the allegations set forth in the claim made by the Plaintiff, and the alleged resulting loss of economic earnings.

**Definitions**

**Present Value** – For purposes herein, we have taken the term "present value" to be defined as the sum of money that, with compound interest, would amount to a specified sum at a specified future date; future value discounted to its worth today.[1]

---

[1] Gamer, Bryan A. Editor-in-Chief. *Black's Law Dictionary*, Seventh Edition; p. 203.



**MEYERS, HARRISON & PIA, LLC**
*Certified Public Accountants and Consultants*

Eric M. Grant, Esq.
March 31, 2011

**Economic Loss** − Excess of projected earnings (or costs) over actual earnings (or costs) under the "before and after" method of determining financial damages. These losses, if any, allegedly stem from the wrongful activity, if any, by the Defendant with the Plaintiff's civil rights.

**Damages** − Money claimed by, or ordered to be paid to, a person as compensation for loss or injury.[2]

**Opinion**

Our opinion of the present value of economic losses allegedly incurred by the Plaintiff is $391,274. This amount includes statutory simple interest calculated at 10 percent for losses experienced through December 31, 2011 (see Exhibit 9). Losses beyond January 1, 2012 will depend upon the duration of the loss period.

**Assumptions**

a. It is assumed that but-for the alleged actions of the Defendants beginning in or about March 2010, the Plaintiff would not have experienced economic damages relating to its business relationships.

b. We have assumed that the Plaintiff is successful in proving that the Defendants have caused economic damages and that their actions were wrongful.

c. The Plaintiff's assertion that there is sufficient demand in the dealer market for an additional 30,000 gallon propane tank is assumed to be accurate. We also have relied on statements made by the Connecticut State Director of the National Propane Gas Association with regard to such demand for propane in the dealer market.

Nothing in this report is intended to be construed as a legal opinion.

**Conclusion**

Based on the above and our analysis, it is our considered opinion, should the Plaintiff prove its case, that Musco has experienced a present value of total lost earnings, or economic damages, at or near December 31, 2011, of:

**Three Hundred Ninety-One Thousand Two Hundred Seventy-Four Dollars**
**$391,274**

---

[2] Ibid; p. 393.



MEYERS, HARRISON & PIA, LLC
*Certified Public Accountants and Consultants*

Eric M. Grant, Esq.
March 31, 2011

**Scope of the Analysis**

Our opinions are subject to the assumptions and limiting conditions presented in Appendix A. We have reviewed and relied upon the sources of information contained in Appendix B.

If we may be of further assistance or if you have any questions, please do not hesitate to contact us.

Sincerely,

MEYERS, HARRISON & PIA, LLC

Joseph A. DeCusati, CPA, ASA, CFE

## NATURE AND HISTORY OF THE CLAIMS

### Overview[3]

Musco is a Connecticut limited liability partnership having a principal place of business located at 585 Wolcott Road in Wolcott, Connecticut.  Musco is a licensed Home Heating Fuel Dealer and Special Fuel Distributor.  In 1998, Randy and Domenic Petroniro, Musco's principals, purchased the abandoned site located at that address.

Musco's ownership is as follows:

| MUSCO PROPANE, LLP | | |
|---|---|---|
| Ownership Distribution | | |
| **Name** | **Position** | **Ownership Interest** |
| Randy T. Petroniro | Managing Partner | 50% |
| Domenic P. Petroniro | Managing Partner | 50% |

Propane sales represent the only segment of Musco's product line.  Musco delivers to residential and commercial customers, such as homes and businesses that use propane for heating and cooking.  They also sell to commercial customers who re-sell propane in smaller quantities.  Examples of such customers are hardware stores and garden centers.  Musco also sells propane to other propane dealers who do not have their own on-site storage.  These propane dealers re-sell the propane to other residential and commercial customers.

By 2006, increased demand for propane led to the installation of a 30,000 gallon above-ground storage tank on the property.  A Certificate of Occupancy was granted on December 28, 2006 and other matters of compliance were satisfied.  Musco began to generate revenues as a result of the installation of the tank.  Musco currently delivers propane to approximately 2,000 customers and distributes propane to six dealers.[4]

Management of Musco recognized the demand for its propane supply and the business opportunity afforded to the Company in the marketplace.  In the spring of 2009, Musco applied for the installation of a second 30,000 gallon above-ground propane storage tank to be located behind the existing tank (the "2009 Tank Application").  Musco alleges that, before the required public hearing, they were informed that the 2009 Tank Application would be denied.  As such, they withdrew the application at that time.  Musco alleges making several attempts to grow its business and increase its on-site propane tank storage capabilities to no avail.

---

[3] Much of the information in this section is derived from the allegations made by the Plaintiff as asserted in their Amended Complaint dated February 2, 2011.
[4] The Complaint relating to this matter dated February 2, 2011, Paragraph 40.

4

On March 22, 2010, an order for Musco to cease and desist all "wholesale"[5] propane sales from the 30,000 gallon propane tank was issued.[6]  Musco alleges that it was economically damaged by the cease and desist order.  We incorporate this allegation into our calculation of damages.

Propane sales from Musco to its retail customers for the period January 1, 2008 through March 14, 2011 is detailed by month in Schedule 1.

Propane sales from Musco to its dealer / transporter customers for the period January 1, 2008 through March 14, 2011 is detailed by month in Schedule 2.

---

[5] The Town of Wolcott has used the term "wholesale" to mean sales by Musco to other propane dealers as described above.  As used in this report, "wholesale" is used to reflect the Town of Wolcott's terminology.
[6] The Complaint relating to this matter dated February 2, 2011, Paragraph 87.

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

**SCHEDULE 1**

**MUSCO PROPANE, LLP**

**SCHEDULE OF RETAIL SALES AND GALLONS SOLD**

**JANUARY 1, 2008 THROUGH MARCH 14, 2011**

**PER MANAGEMENT'S INTERNALLY GENERATED REPORTS**

| Month | Gallons Sold | Revenue |
|---|---|---|
| through March 14, 2011 | 48,589 | $129,552.01 |
| February 2011 | 119,203 | $323,976.89 |
| January 2011 | 136,982 | $355,850.57 |
| December 2010 | 126,526 | $326,026.49 |
| November 2010 | 61,561 | $153,152.97 |
| October 2010 | 45,814 | $116,599.09 |
| September 2010 | 41,097 | $97,052.90 |
| August 2010 | 19,560 | $41,817.35 |
| July 2010 | 13,966 | $29,196.63 |
| June 2010 | 19,577 | $42,240.54 |
| May 2010 | 30,465 | $68,757.22 |
| April 2010 | 37,164 | $86,704.36 |
| March 2010 | 69,115 | $168,400.05 |
| February 2010 | 115,092 | $289,093.89 |
| January 2010 | 121,809 | $301,767.07 |
| December 2009 | 99,042 | $239,592.20 |
| November 2009 | 56,649 | $126,880.71 |
| October 2009 | 42,492 | $98,905.83 |
| September 2009 | 46,796 | $106,027.36 |
| August 2009 | 17,533 | $36,057.60 |
| July 2009 | 24,128 | $42,338.87 |
| June 2009 | 19,498 | $38,285.11 |
| May 2009 | 29,342 | $57,547.71 |
| April 2009 | 39,101 | $83,116.44 |
| March 2009 | 85,734 | $193,987.29 |
| February 2009 | 99,678 | $244,416.71 |
| January 2009 | 129,982 | $323,620.82 |
| December 2008 | 85,687 | $204,866.14 |
| November 2008 | 59,481 | $145,756.46 |
| October 2008 | 29,907 | $75,103.46 |
| September 2008 | 46,169 | $130,250.45 |
| August 2008 | 13,723 | $37,660.11 |
| July 2008 | 13,115 | $37,508.70 |
| June 2008 | 17,128 | $47,962.63 |
| May 2008 | 26,172 | $70,465.73 |
| April 2008 | 36,427 | $94,627.04 |
| March 2008 | 70,278 | $178,559.86 |
| February 2008 | 72,049 | $176,135.17 |
| January 2008 | 85,114 | $200,603.53 |

6

**SCHEDULE 2**

**MUSCO PROPANE, LLP**

**SCHEDULE OF DEALER / TRANSPORT SALES AND GALLONS SOLD**

**JANUARY 1, 2008 THROUGH MARCH 14, 2011**

**PER MANAGEMENT'S INTERNALLY GENERATED REPORTS**

| Month | Gallons Sold | Revenue |
|---|---|---|
| through March 14, 2011 | 50,211 | $88,725.97 |
| February 2011 | 96,218 | $173,761.46 |
| January 2011 | 124,751 | $229,998.07 |
| December 2010 | 91,066 | $159,971.83 |
| November 2010 | 50,246 | $86,914.86 |
| October 2010 | 81,608 | $137,298.97 |
| September 2010 | 52,117 | $81,486.27 |
| August 2010 | 47,057 | $68,639.41 |
| July 2010 | 27,450 | $38,400.05 |
| June 2010 | 48,866 | $70,788.89 |
| May 2010 | 38,185 | $56,249.71 |
| April 2010 | 52,391 | $78,610.27 |
| March 2010 | 101,524 | $159,568.36 |
| February 2010 | 135,016 | $227,636.29 |
| January 2010 | 138,262 | $236,365.75 |
| December 2009 | 120,168 | $184,106.11 |
| November 2009 | 79,630 | $114,041.53 |
| October 2009 | 68,059 | $94,150.22 |
| September 2009 | 50,026 | $65,430.60 |
| August 2009 | 40,842 | $51,503.11 |
| July 2009 | 53,460 | $60,556.71 |
| June 2009 | 55,570 | $70,481.73 |
| May 2009 | 43,986 | $49,152.17 |
| April 2009 | 73,640 | $80,110.30 |
| March 2009 | 122,001 | $138,926.84 |
| February 2009 | 155,031 | $225,468.74 |
| January 2009 | 198,959 | $281,245.85 |
| December 2008 | 180,782 | $213,298.96 |
| November 2008 | 116,787 | $146,703.86 |
| October 2008 | 56,649 | $94,336.18 |
| September 2008 | 37,392 | $75,091.65 |
| August 2008 | 31,742 | $63,711.05 |
| July 2008 | 33,402 | $74,628.48 |
| June 2008 | 32,567 | $69,784.02 |
| May 2008 | 45,103 | $92,455.13 |
| April 2008 | 73,256 | $139,769.94 |
| March 2008 | 138,142 | $256,000.93 |
| February 2008 | 121,774 | $217,799.69 |
| January 2008 | 152,870 | $287,982.86 |

7

# INDUSTRY OVERVIEW

## Overview[7]

Propane is a versatile energy source used by more than 14 million families in and around their homes for furnaces, water heaters, cooktops, outdoor grills, fireplaces, generators, and other appliances. Propane is helping Americans shrink their carbon footprint by providing a "green" solution for the environmentally conscious consumer. Propane delivers a clean, cost-effective, efficient, and reliable energy solution.

Business owners across the country are choosing propane as a clean-burning fuel for bus, taxi, delivery, and other fleets to minimize air pollution in metropolitan areas. Propane is also used in commercial establishments, including restaurants and hotels that depend on propane for heating, cooking, and other uses.

The U.S. fuel oil and liquid propane ("LP") gas dealer (fuel dealer) industry includes about 10,000 establishments (single-location companies and branches of multi-location companies) with combined annual revenue of about $35 billion. Major companies include AmeriGas Partners, Ferrellgas Partners, and Star Gas Partners. The fuel dealer industry is fragmented: the top 50 companies hold less than 40 percent of sales.

Propane gas prices are an important issue to the 30,000 Connecticut homeowners who heat with propane and for the 200,000 who use propane for cooking, fireplaces, and small heaters. Most propane users live in Western or Eastern Connecticut, where there are few natural gas lines available.

When Jerry Farrell, Jr. was Consumer Protection Commissioner in Connecticut, he and his staff conducted a lengthy investigation into propane pricing. His findings showed that some companies had profit margins as high as 54 percent. This gross margin percentage far exceeds gasoline station owners or oil dealers. It also exceeds the historical gross margin percentage of Musco.

---

[7] Much of the information in this section is derived from the National Propane Gas Association website located at http://www.npga.org/i4a/pages/index.cfm?pageid=462 and the First Research industry profile for Fuel Dealers dated December 6, 2010.

8

# NATURE OF DAMAGE CALCULATIONS

The period of the damages, as defined in this report, begins in or about the first quarter of 2010. We quantify the alleged losses of Musco through December 31, 2011 and also provide calculations of the amount of those alleged losses should the loss period continue beyond that date.

### Requirements for Recovery of Damages[8]

1) *Proximate Cause* – Recovery of damages for lost earnings is subject to the general principle that damages must be proximately caused by the wrongful conduct of the Defendants. While we do not provide an opinion with regard to the allegations in this case, we have assumed for the purposes of our calculation of economic damages that the Defendants' alleged actions are the cause of Musco's claimed economic losses. Should the Defendants' prevail with respect to the determination of liability, there would be no economic losses sustained by Musco.

2) *Reasonable Certainty* – Another requirement for recovery of damages for loss of earnings is that damages be proven with reasonable certainty. We have calculated the alleged damages in this report with a reasonable level of accounting and economic certainty based on the assumptions discussed previously.

---

[8] Gaughan, Patrick A. *Measuring Business Interruption Losses and Other Commercial Damages*, John Wiley & Sons, Inc. (2004), Page 29.

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

# CALCULATIONS OF LOST EARNINGS (DAMAGES)

In a damage assessment, the objective is to make the Plaintiff whole where there has been a breach of contract, tort, or civil rights, as is alleged in this action.  The purpose of a damage determination analysis is to place the alleged injured party in substantially the same position as if there had been no action to injure on behalf of the defendant.  The purpose of this report is to quantify the present value of economic damages allegedly suffered by Musco based on the allegations in this case assuming they are proven to be true.

There are three generally accepted methods that are recognized as appropriate for a calculation of economic damages.[9]

***Before and After Method*** – The Before and After Method compares profits (or earnings) earned before the alleged wrongful act or event to profits (or earnings) after the occurrence.  The purpose of this method is to illustrate that "but for" the alleged act or event, the business would have earned the profit that it had earned in the past and that, by virtue of the alleged act, the plaintiff has been deprived of some or all of those economic profits.

This method is suitable if the subject business has an established pattern of activity or track record, and assumes the plaintiff can show the sole (or at least the major) cause of the loss of earnings or profits was because of the defendant's activity.  When using this method, the plaintiff's earnings, for example, may be compared before and after the alleged acts of the defendant.  We employed this methodology in our analysis.

***Accounting for Profits Method (a/k/a, Sales Projections Method)*** – In some damage determination cases, the plaintiff's losses are because of sales and profits that were diverted to the defendant and would have gone to the plaintiff but for the cause; in other cases, these profits are simply unattainable due to the parties' wrongful conduct.

This method is common in cases of unfair competition, breach of covenants not to compete, or misappropriation of trade secrets.[10]  In this method, the damages expert projects the profits, in effect "normalizing" them to remove the effects of the defendant's alleged action.

***Yardstick Method*** – While the Before and After Method is suitable to apply if the tort or breach disrupts a business's going concern with an established track record, that method would not measure damages for lost new opportunities.  A new business without a history of sales or profits would not be able to use the Before and After Method to prove damages, because any damages incurred would be due only to lost opportunity.  The Yardstick Method lets us use market evidence to explain what could have occurred but for the cause.

---

[9] *Economic Damages*, The Institute of Business Appraisers, Course #1021, Michele G. Miles, Esq. and Alfred Zeiler, AIBA co-authors, copyright 2005, pages 30-39, as well as, *Financial Valuation: Businesses and Business Interests*; James H. Zukin, pages 9-59 through 9-60
[10] *Economic Damages,* The Institute of Business Appraisers, Course #1021, Michele G. Miles, Esq. and Alfred Zeiler, AIBA co-authors, copyright 2005, page 37.

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

**EXHIBIT 3**

**MUSCO PROPANE, LLP**

**RESULTS OF OPERATIONS - AS REPORTED ON ITS ACCRUAL BASIS BUSINESS INCOME TAX RETURNS**

| For the Years Ended December 31, | 2010 | 2009 | 2008 | 2007 | 2006 | 2005 | 2004 |
|---|---|---|---|---|---|---|---|
| Revenues | $ 3,349,028 | $ 3,122,268 | $ 3,595,474 | $ 2,017,973 | $ 632,119 | 536,230 | 330,175 |
| **Cost of Sales:** | | | | | | | |
| Beginning inventory | 250,253 | 23,500 | 13,795 | 175,990 | 165,930 | 98,282 | 35,035 |
| Purchases | 2,333,616 | 2,481,300 | 3,051,085 | 1,526,220 | 487,845 | 387,416 | 232,015 |
| Less: ending inventory | (347,896) | (250,253) | (23,500) | (13,795) | (175,990) | (165,930) | (98,282) |
| Total Cost of Sales | 2,235,973 | 2,254,547 | 3,041,380 | 1,688,415 | 477,785 | 319,768 | 168,768 |
| Gross Profit | 1,113,055 | 867,721 | 554,094 | 329,558 | 154,334 | 216,462 | 161,407 |
| **Operating Expenses:** | | | | | | | |
| Partner compensation | - | - | - | - | - | - | - |
| Salaries and wages | - | - | - | - | - | - | - |
| Repairs and maintenance | 8,262 | 12,230 | 1,775 | 16,117 | 3,350 | 332 | 42 |
| Rents | 4,500 | 13,500 | 20,000 | 20,000 | 6,250 | 19,250 | 18,000 |
| Taxes and licenses | 9,720 | 4,478 | 4,462 | 1,297 | 1,777 | 2,011 | 2,216 |
| Professional fees | 115,602 | 11,730 | 2,458 | 330 | 2,410 | 825 | 525 |
| Advertising and promotion | 48,950 | 53,878 | 59,194 | 35,853 | 27,819 | 20,229 | 17,617 |
| Bank charges and fees | 1,192 | 307 | 925 | 309 | 41 | 80 | 50 |
| Credit and collection costs | 2,074 | 3,483 | 968 | 290 | - | - | - |
| Dues and subscriptions | 2,804 | 5,720 | 1,890 | 2,063 | 375 | 1,438 | 40 |
| General expenses | 86,809 | 65,310 | 17,778 | 14,858 | 6,355 | 14,606 | 13,585 |
| Meals and entertainment | 14,308 | | 1,313 | 12,018 | | | - |
| Office expenses | 12,749 | 18,681 | 36,500 | 9,818 | 5,618 | 2,478 | - |
| Printing | 364 | 84 | 1,034 | 3,505 | 2,700 | 1,158 | - |
| Telephone | 3,172 | 3,695 | 1,010 | 666 | 2,667 | 6,707 | 5,247 |
| Travel | 7,154 | 11,541 | 3,206 | - | 1,792 | 834 | - |
| Subcontracting | 13,743 | 5,126 | 6,094 | 44,131 | - | 69,170 | 70,731 |
| Automobile and truck expenses | 46,758 | 54,173 | 34,318 | 26,405 | 25,608 | 16,995 | 7,317 |
| Small tools | - | - | 869 | - | - | - | - |
| Filing fees | - | 569 | 1,400 | 226 | 852 | - | 195 |
| GPS tracking | - | - | - | 1,238 | - | - | - |
| Permits and licenses | 7,378 | 4,838 | 4,653 | 4,770 | - | 388 | 473 |
| Materials and supplies | 15,554 | 15,084 | 14,104 | 30,299 | 4,567 | 878 | 1,725 |
| Medical expenses | - | - | 3,123 | 1,546 | 2,229 | - | - |
| Employee benefits | 58,249 | 1,966 | - | - | - | - | - |
| Equipment leasing and rental | - | 615 | - | 406 | 2,757 | - | 1,067 |
| Freight and delivery | 18,473 | 8,956 | - | 594 | 9,667 | - | - |
| Utilities | 623 | 4,212 | - | - | - | - | - |
| Tank expenses | 6,660 | 2,515 | - | 500 | - | - | 1,059 |
| Unscheduled expenses | - | - | - | 30,000 | - | - | - |
| Seminars | - | - | - | - | - | - | 350 |
| Depreciation and amortization | 11,573 | 20,981 | 27,914 | 46,496 | 15,126 | 48,659 | 26,512 |
| Total Operating Expenses | 496,671 | 323,672 | 246,226 | 302,497 | 121,960 | 206,038 | 166,751 |
| **Income From Operations** | 616,384 | 544,049 | 307,868 | 27,061 | 32,374 | 10,424 | (5,344) |
| **Other Income (Expenses):** | | | | | | | |
| Interest income | - | - | - | - | - | 5 | - |
| Charitable contributions | (200) | - | - | - | - | - | - |
| Interest expense | (342) | (685) | (11,285) | (7,230) | (6,580) | (4,408) | (3,494) |
| Total Other Income (Expenses) | (542) | (685) | (11,285) | (7,230) | (6,580) | (4,403) | (3,494) |
| **Earnings Before Taxes** | 615,842 | 543,364 | 296,583 | 19,831 | 25,794 | 6,021 | (8,838) |
| **Income Taxes:** | | | | | | | |
| Federal income tax | - | - | - | - | - | - | - |
| State income tax | - | - | - | - | - | - | - |
| Total Income Taxes | - | - | - | - | - | - | - |
| **Net Income** | $ 615,842 | $ 543,364 | $ 296,583 | $ 19,831 | $ 25,794 | $ 6,021 | $ (8,838) |
| Change in Sales | 7.3% | -13.2% | 78.2% | 219.2% | 17.9% | 62.4% | N/M |

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

**EXHIBIT 4**

**MUSCO PROPANE, LLP**

**RESULTS OF OPERATIONS - AS REPORTED ON ITS ACCRUAL BASIS BUSINESS INCOME TAX RETURNS, COMMON SIZE**

| For the Years Ended December 31, | 2010 | 2009 | 2008 | 2007 | 2006 | 2005 | 2004 |
|---|---|---|---|---|---|---|---|
| Revenues | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% |
| **Cost of Sales:** | | | | | | | |
| Beginning inventory | 7.5% | 0.8% | 0.4% | 8.7% | 26.2% | 18.3% | 10.6% |
| Purchases | 69.7% | 79.5% | 84.9% | 75.6% | 77.2% | 72.2% | 70.3% |
| Less: ending inventory | -10.4% | -8.0% | -0.7% | -0.7% | -27.8% | -30.9% | -29.8% |
| Total Cost of Sales | 66.8% | 72.3% | 84.6% | 83.6% | 75.6% | 59.6% | 51.1% |
| **Gross Profit** | 33.2% | 27.7% | 15.4% | 16.4% | 24.4% | 40.4% | 48.9% |
| **Operating Expenses:** | | | | | | | |
| Partner compensation | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Salaries and wages | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Repairs and maintenance | 0.2% | 0.4% | 0.0% | 0.8% | 0.5% | 0.1% | 0.0% |
| Rents | 0.1% | 0.4% | 0.6% | 1.0% | 1.0% | 3.6% | 5.5% |
| Taxes and licenses | 0.3% | 0.1% | 0.1% | 0.1% | 0.3% | 0.4% | 0.7% |
| Professional fees | 3.5% | 0.4% | 0.1% | 0.0% | 0.4% | 0.2% | 0.2% |
| Advertising and promotion | 1.5% | 1.7% | 1.6% | 1.8% | 4.4% | 3.8% | 5.3% |
| Bank charges and fees | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Credit and collection costs | 0.1% | 0.1% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Dues and subscriptions | 0.1% | 0.2% | 0.1% | 0.1% | 0.1% | 0.3% | 0.0% |
| General insurance | 2.6% | 2.1% | 0.5% | 0.7% | 1.0% | 2.7% | 4.1% |
| Meals and entertainment | 0.4% | 0.0% | 0.0% | 0.6% | 0.0% | 0.0% | 0.0% |
| Office expenses | 0.4% | 0.6% | 1.0% | 0.5% | 0.9% | 0.5% | 0.0% |
| Printing | 0.0% | 0.0% | 0.0% | 0.2% | 0.4% | 0.2% | 0.0% |
| Telephone | 0.1% | 0.1% | 0.0% | 0.0% | 0.4% | 1.3% | 1.6% |
| Travel | 0.2% | 0.4% | 0.1% | 0.0% | 0.3% | 0.2% | 0.0% |
| Subcontracting | 0.4% | 0.2% | 0.2% | 2.2% | 0.0% | 12.9% | 21.4% |
| Automobile and truck expenses | 1.4% | 1.7% | 1.0% | 1.3% | 4.1% | 3.2% | 2.2% |
| Small tools | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Filing fees | 0.0% | 0.0% | 0.0% | 0.0% | 0.1% | 0.0% | 0.1% |
| GPS tracking | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Permits and licenses | 0.2% | 0.2% | 0.1% | 0.2% | 0.0% | 0.1% | 0.1% |
| Materials and supplies | 0.5% | 0.5% | 0.4% | 1.5% | 0.7% | 0.2% | 0.5% |
| Medical expenses | 0.0% | 0.0% | 0.1% | 0.1% | 0.4% | 0.0% | 0.0% |
| Employee benefits | 1.7% | 0.1% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Equipment leasing and rental | 0.0% | 0.0% | 0.0% | 0.0% | 0.4% | 0.0% | 0.3% |
| Freight and delivery | 0.6% | 0.3% | 0.0% | 0.0% | 1.5% | 0.0% | 0.0% |
| Utilities | 0.0% | 0.1% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Tank expenses | 0.2% | 0.1% | 0.0% | 0.0% | 0.0% | 0.0% | 0.3% |
| Unscheduled expenses | 0.0% | 0.0% | 0.0% | 1.5% | 0.0% | 0.0% | 0.0% |
| Seminars | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.1% |
| Depreciation and amortization | 0.3% | 0.7% | 0.8% | 2.3% | 2.4% | 9.1% | 8.0% |
| Total Operating Expenses | 14.8% | 10.4% | 6.7% | 14.9% | 19.3% | 38.8% | 50.4% |
| **Income From Operations** | 18.4% | 17.3% | 8.7% | 1.5% | 5.1% | 1.6% | -1.5% |
| **Other Income (Expenses):** | | | | | | | |
| Interest income | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Charitable contributions | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Interest expense | 0.0% | 0.0% | -0.3% | -0.4% | -1.0% | -0.8% | -1.1% |
| Total Other Income (Expenses) | 0.0% | 0.0% | -0.3% | -0.4% | -1.0% | -0.8% | -1.1% |
| **Earnings Before Taxes** | 18.4% | 17.3% | 8.4% | 1.1% | 4.1% | 0.8% | -2.6% |
| **Income Taxes:** | | | | | | | |
| Federal income tax | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| State income tax | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Total Income Taxes | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| **Net Income** | 18.4% | 17.3% | 8.4% | 1.1% | 4.1% | 0.8% | -2.6% |

16

**Lost Profits – Cease and Desist Period**

The Complaint relating to this matter explains that Musco had enjoyed, and continues to enjoy, the use of a 30,000 gallon propane tank located on its facility from January 2007 to the present. On March 22, 2010, an order for Musco to Cease and Desist all wholesale propane sales from this 30,000 gallon propane tank was issued.[11]   The Cease and Desist order was in place through October 13, 2010 when a status quo stipulation was reached with the Town of Wolcott.

Randy Petroniro, managing partner of Musco, informed us that he prices the propane sold by Musco to its dealers to achieve a $.20 markup per gallon.  This markup has ranged from $.18 to $.22 but he, on most occasions, attempts to achieve the goal profit of $.20 per gallon based on the current market price.  Randy Petroniro also enters into hedging transactions, which often increase his profit per gallon beyond $.20.  According to Randy Petroniro, it is not unusual for the incremental profit per gallon to diminish in the summer months for several reasons.

To calculate the lost profits relating to this element of the Plaintiff's claim, we first determined the number of gallons of propane not sold by Musco as a result of the Cease and Desist order. Information supplied by Musco reveals that approximately 156 thousand fewer gallons of propane were sold for the period covering March 2010 through March 2011 as compared to the same twelve month period immediately preceding.

Of that amount, reports generated by Musco reveal that the number of gallons of propane sold in the summer season of 2010 was approximately 40 thousand less than the amount sold in the same period of the previous year.  Musco attributes this diminished sales activity solely to the issues of this legal action.

We also gathered the data necessary to calculate the actual incremental profit per gallon experienced by Musco during this period.

As this first element of damages relates only to losses experienced during the Cease and Desist period, we determined the losses experienced by Musco as follows:

---

[11] The Complaint relating to this matter dated February 2, 2011, Paragraph 87.

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

**EXHIBIT 5**
**MUSCO PROPANE, LLP**
**CEASE AND DESIST PERIOD LOSSES**

| For the Period Starting | For the Period Ending | Dealer Gallons Sold | Calculated |
|---|---|---|---|
| March 22, 2009 | October 13, 2009 | 362,005.5009 | |
| March 22, 2010 | October 13, 2010 | 322,511.9002 | |
| Difference (Reduced Sales in Gallons) | | | 39,493.6007 |
| Incremental Profit Per Gallon | | | $    0.1545 |
| Lost Profits - Cease and Desist Period | | | $    6,102 |

**Lost Profits – Post-Cease and Desist Period through March 14, 2011**

It is important to distinguish the amount of lost volume sales attributable to the summer months for numerous reasons. Discussions with T. Michael Morrissey, Connecticut State Director of the National Propane Gas Association, reveal that the propane industry routinely determines the amount of busier winter season supply of propane available to dealers such as Musco based on volume purchased during the slower summer season. As such, any disruption of the volume of propane demand to companies such as Musco in the summer has an even greater effect on the supply of propane during the winter months. For example, Mr. Morrissey has confirmed that, for every gallon of propane purchased in the summer months by fuel dealers such as Musco, an allocation of 1.4 gallons of propane was in place in the 2010-2011 winter season. This allocation changes annually. For the 2009-2010 winter season, the allocation allowed by the pipeline operations was a 3.0:1 ratio.

We then determined the number of gallons of propane not sold by Musco as a result of lost dealer sales for the period covered in Exhibit 6. Information supplied by Musco reveals that just greater than 116 thousand fewer gallons of propane were sold for the period covering October 14, 2010 through March 14, 2011 as compared to the same period immediately preceding.

We also gathered the data necessary to calculate the actual incremental profit per gallon experienced by Musco during this period.

Musco attributes this diminished sales activity solely to the issues of this legal action.

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

**EXHIBIT 6**
**MUSCO PROPANE, LLP**
**POST-CEASE AND DESIST PERIOD LOSSES THROUGH MARCH 14, 2011**

| For the Period Starting | For the Period Ending | Dealer Gallons Sold | Calculated |
|---|---|---|---|
| October 14, 2009 | March 14, 2010 | 572,670.4013 | |
| October 14, 2010 | March 14, 2011 | 456,468.9026 | |
| Difference (Reduced Sales in Gallons) | | | 116,201.4987 |
| Incremental Profit Per Gallon | | | $    0.3955 |
| Lost Profits - Post-Cease and Desist Period | | | $   45,958 |

**Lost Profits – Spot Market Purchases**

As a result of diminished purchases of propane in the summer of 2010, Musco's supply for the winter of 2010-2011 was reduced.  In an effort not to lose its existing customer base to alternative propane dealers, Musco made the decision to provide its customers with propane purchased from alternative suppliers.  Like many commodities, a spot market exists for propane that will supply purchasers without consideration of the 1.4:1 gallon ratio discussed earlier.  These purchases are made at a premium, however.  Musco alleges that these spot purchases would not be necessary if the Cease and Desist order was not in place for the summer season of 2010.

We compared the actual price paid by Musco for these spot market purchases and compared it to the price that Musco would have experienced in the open market.

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

| EXHIBIT 7 | | | |
| --- | --- | --- | --- |
| MUSCO PROPANE, LLP | | | |
| ADDITIONAL SPOT MARKET PURCHASE COSTS INCURRED | | | |
| | | Dealer | |
| For the Period Starting | For the Period Ending | Gallons Sold | Calculated |
| March 22, 2009 | October 13, 2009 | 362,005.5009 | |
| March 22, 2010 | October 13, 2010 | 322,511.9002 | |
| | Difference (Reduced Sales in Gallons) | | 39,493.6007 |
| | Winter Purchase Allocation (Winter 2010-2011) | | 1.40 |
| | Lost Allocation of Gallons (Winter 2010-2011) | | 55,291.04 |
| Premium Price Paid Per Gallon (Winter 2010-2011) on Spot Market Purchases | | | $ 0.2890 |
| Additional Spot Market Premium Paid by Musco (Winter 2010-2011) | | | $ 15,979 |

## Opportunity Cost – Additional Propane Tank

During 2010, a related party entity of Musco received an offer to purchase a propane storage tank from Sikorsky Aircraft Corporation for $10,000. According to Randy Petroniro, this amount reflects a significant discount from market value, and such offers are a rarity. Musco could not complete the purchase due to the long-standing legal issues that are the cause of this action. As such, they allege losses for the difference in the cost of a reasonably similar propane storage tank. The current cost of a similar used 30,000 gallon propane tank is $91,025. As such, we determine the difference of $81,025 to reflect a lost opportunity cost.

## Projected Future Losses

Musco alleges that the Defendants have been working together to deprive the Company of its rights. They allege that through the date of this report, the Defendants have been successful in their efforts to some degree. Musco asserts that they will be able to benefit from the additional 30,000 gallon propane tank in three ways.

First, given the success experienced in the past, management of Musco is confident that its hedging activities will continue to be successful in garnering additional profit margin. Having capacity to purchase an additional 30,000 gallons at reduced prices will serve to benefit the Company through increased profit margins.

Second, management of Musco projects it will double its sales to dealers within a reasonable geographic radius resulting from an additional 30,000 gallon propane tank. This estimate of potential growth is confirmed by T. Michael Morrissey. Management does not determine that it will experience any meaningful increase in its sales to residential or commercial customers to be

20

effected by an additional 30,000 gallon propane tank. Management believes that it could have had the additional 30,000 gallon propane tank operational prior to March 15, 2011. Management of Musco believes that but for the alleged actions of the Defendants, the additional tank would have been installed and operational well before March 15, 2011. For purposes of this report, however, we begin the loss period relating to the lost profits attributable to this additional 30,000 gallon propane tank as of March 15, 2011. This methodology also allows consideration of a "ramp up" period for this additional tank, as it would take time to attract the demand in the marketplace.

Third, the additional purchasing activity experienced by Musco should it attain use of an additional 30,000 gallon propane tank will result in Musco being allowed additional allocations of propane from the pipeline during winter months. This will minimize the premium experienced by Musco for its purchases made on the spot market.

We then incorporate the losses from being denied the 30,000 gallon propane tank to the other elements of loss discussed earlier to determine the losses that will be experienced on a going forward basis.

In Exhibit 8, we determine the amount of damages experienced by Musco for the period covering March 15, 2011 through December 31, 2011. The sole component of economic damages during this period relate to the loss of dealer sales for that period.

| EXHIBIT 8 |
|---|
| MUSCO PROPANE, LLP |
| LOSSES - MARCH 15, 2011 THROUGH DECEMBER 31, 2011 |

| | | |
|---|---:|---:|
| Dealer Gallons Sold (Average of 2008 and 2009) | 1,040,919 | |
| Less: Dealer Gallons Sold (January 1, 2011 through March 14, 2011) | (271,180) | |
| Projected Dealer Sales From Existing 30,000 Gallon Tank (March 15, 2011 Through December 31, 2011) | 769,739 | |
| Incremental Profit Per Gallon - Based on Full Year Cycle (March 2010 through March 2011) | $   0.2952 | |
| Lost Profits For Additional Dealer Sales from Additional Tank (March 15, 2011 Through December 31, 2011) | | $   227,227 |

This concludes our analysis of all elements of economic damages as of December 31, 2011.

## Conclusion

Based on our analysis, it is our considered opinion that the Plaintiff has allegedly experienced a present value of total lost earnings, or economic damages, at or near December 31, 2011, in the amount of:

**Three Hundred Ninety-One Thousand Two Hundred Seventy-Four Dollars**
**$391,274**

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

**EXHIBIT 9**

MUSCO PROPANE, LLP

SUMMARY TABLE OF ECONOMIC LOSS CALCULATIONS

| Loss of Economic Profits | Exhibit Ref. | Economic Losses | Simple Interest | Total |
|---|---|---|---|---|
| Lost Profits - Cease and Desist Period | 5 | $    6,102 | $    742 | $    6,844 |
| Lost Profits - Post-Cease and Desist Period through March 14, 2011 | 6 | 45,958 | 3,677 | 49,635 |
| Lost Profits - Spot Market Purchases | 7 | 15,979 | 1,475 | 17,454 |
| Opportunity Cost - Additional Propane Tank | narrative | 81,025 | - | 81,025 |
| Lost Profits - March 15, 2011 through December 31, 2011 | 8 | 227,227 | 9,089 | 236,316 |
| Economic Damages Experienced After January 1, 2012 | see Exhibit 11 | n/a | - | |
| **Present Value of Total Economic Damages as of December 31, 2011** | | **$   376,291** | **$   14,983** | **$   391,274** |

## Additional Consideration

Time has elapsed, and will continue to elapse, between the alleged actions of the Defendants and the date of trial. As such, we made a provision for the interest accumulated to date on the Plaintiff's alleged damages. Connecticut statute allows up to 10 percent to be paid on a simple interest basis. We calculated simple interest on the alleged economic losses at 10 percent at your request in Exhibit 9.

## Losses Experienced Beyond January 1, 2012

Should their allegations in this case prove to be true and those damages continue beyond December 31, 2011, we estimate future damages after January 1, 2012 resulting from the lack of being able to attain an additional 30,000 gallon propane tank as follows. The amount of economic damages experienced after January 1, 2012 depends upon the duration of the loss period (see Exhibit 11).

We conservatively estimate the total forecasted lost annual cash flows of Musco to be $321,491 in Exhibit 10. We also conservatively project that these cash flows will not grow for the period January 1, 2012 through December 31, 2016.

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

**EXHIBIT 10**

**MUSCO PROPANE, LLP**

**FUTURE ANNUAL LOSSES - LOST OPPORTUNITY AFFORDED WITH AN ADDITIONAL 30,000 GALLON PROPANE TANK**

| | | |
|---|---:|---:|
| Spot Market Gallons Purchased (Winter 2010-2011) | | 230,107 |
| Premium Price Paid Per Gallon (Winter 2010-2011) on Spot Market Purchases | $ 0.2890 | |
| Spot Market Premium Saved by Musco with an Additional 30,000 Gallon Propane Tank | | $ 66,501 |
| Additional Dealer Gallon Sales (Based on 2010 Total) | 863,788 | |
| Incremental Profit Per Gallon - Based on Full Year Cycle (March 2010 through March 2011) | $ 0.2952 | |
| Annual Incremental Profit Produced by Additional Tank | | $ 254,990 |
| Total Annual Profit Projected from Additonal 30,000 Gallon Propane Tank | | $ 321,491 |

In the determination of the terminal value, we project growth of 3 percent for the period of losses beyond January 1, 2017 should the alleged losses continue to be experienced by Musco.

Finally, to achieve present value of damages as of December 31, 2011, we must discount the amount of damages earned beyond December 31, 2011 to present value. Based on our analysis, we determined that the appropriate discount rate to apply to the projected future cash flows of Musco is 25 percent.

**EXHIBIT 11**

**MUSCO PROPANE, LLP**

**DISCOUNTED FUTURE LOSSES**

| | Forecasted Net Cash Flows | Mid-Year Discount Factor[1] | Present Value |
|---|---:|---:|---:|
| 2012 (see (A) below) | $ 171,491 | 1.12 | $ 153,117 |
| 2013 | $ 321,491 | 1.40 | $ 229,636 |
| 2014 | $ 321,491 | 1.75 | $ 183,709 |
| 2015 | $ 321,491 | 2.18 | $ 147,473 |
| 2016 | $ 321,491 | 2.73 | $ 117,762 |
| Terminal Value | $ 1,505,164 | 2.73 | $ 551,342 |
| **Economic Losses Beyond January 1, 2012** | | | **$ 1,383,039** |

[1] A mid-year convention was utilized in the calculation of the discount factor to account for the fact that cash is generated over the course of the year, not as a lump sum at the beginning or end of the year.

(A) - 2012 total excludes $150,000 estimated cost of implementing new 30,000 tank.

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

## Appendix A

**Musco Propane, LLP v. Town of Wolcott, et al**
**Assumptions and Limiting Conditions**

1. Information, estimates, and opinions contained in this report are obtained from sources considered to be reliable. However, we assume no liability for such sources. Meyers, Harrison & Pia, LLC assumes no responsibility for any liability for damages of any kind resulting from reliance on this report by any party.

2. Musco and its representatives warranted to us that the information they supplied was complete and accurate to the best of their knowledge. Information supplied has been accepted as correct without further verification and we express no opinion on that information.

3. Possession of this report, or a copy thereof, is confidential and does not carry with it the right of publication of all or part of it, nor may it be used for any purpose by anyone other than the parties in this engagement for the specified purpose without our previous written consent and, in any event, only with proper attribution.

4. We are not required to give testimony in court or be in attendance during any hearings or depositions, with reference to this matter unless previous arrangements have been made.

5. The various estimates presented in this report apply to this analysis only and may not be used out of the context presented herein. This analysis is valid only for the purpose or purposes specified herein. Such other use will render the report invalid and is not authorized.

6. This report reflects facts and conditions existing at the opinion date. Subsequent events have not been considered. We have no obligation to update our report for any other events and conditions.

7. This report was prepared under the direction of Joseph A. DeCusati, CPA, ASA, CFE. Neither the professionals who worked on this engagement nor the members of Meyers, Harrison & Pia, LLC have any present or contemplated future interest in any parties earnings and assets, any personal interest with respect to the parties involved, or any other interest that might prevent us from performing an unbiased analysis.

8. We are not issuing any legal opinions within this report.

This report is subject to the terms and conditions set forth in an engagement letter between Musco Propane, LLP and Meyers, Harrison & Pia, LLC, dated March 10, 2011.

24

**Appendix B**

**Musco Propane, LLP v. Town of Wolcott, et al**
**Significant Sources of Information**

1. U.S. Return of Partnership Income of Musco for the years ended December 2003, 2004, 2005, 2006, 2007, 2008, 2009, and 2010.

2. An internally generated income statement of Musco for the year ending December 31, 2010.

3. Preliminary calculations of alleged losses experienced by Musco as a result of this action as prepared by management of Musco and T. Michael Morrissey, Connecticut State Director of the National Propane Gas Association.

4. Transaction by Code reports of Musco for various time periods.

5. An Invoice Detail Listing prepared by Texas Liquids Partners, LLC detailing all vendor purchases made by Musco for the period covering January 1, 2009 through March 24, 2011.

6. A Storage Tank and Related Ancillary Equipment Agreement between Sikorsky Aircraft Corporation and Musco Fuel & Heating, LLC.

7. A quote dated March 29, 2011 for a 30,000 gallon propane tank issued to Morrissey Consulting, LLC from East Coast Utilities Co.

8. A report dated March 30, 2011 prepared by T. Michael Morrissey of Morrissey Consulting, LLC relating to this litigated matter.

9. The Amended Complaint relating to this matter dated February 2, 2011.

10. Discussions and meetings with counsel and management of Musco including a site visit and interview performed on March 21, 2011.

11. A graph of the Propane Production and Distribution System as prepared by the Energy Information Administration.

12. Various internet websites related to the industry in which Musco operates.

13. Zukin, James H. *Financial Valuation: Businesses and Business Interest* (specifically Chapter 9 on the topic of financial damages) Warren Gorham Lamont, 1990.

14. Martin, Ph.D., Gerald D. and Ted Vavoulis, *Determining Economic Damages*; Revision #14, June 2002.

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

15.   *Economic Damages*; Institute of Business Appraisers; course book for Course #1021, Summer 2005.

16.   First Research, *Industry Profile:* "Fuel Dealers," December 6, 2010.

17.   *Propane Consumer Protection Legislation to be Introduced in Connecticut This Year*, George Gombossy, ctwatchdog.com, March 15, 2011.

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

**Appendix C**

**Musco Propane, LLP v. Town of Wolcott, et al**
**Certifications**

I certify that to the best of my knowledge and belief:

1.   All the facts and data set forth in this report are true and accurate.  No matters affecting the conclusions reflected herein have knowingly been withheld or omitted.

2.   The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, unbiased professional analyses, opinions, and conclusions.

3.   I have no present or prospective interest in the property that is the subject of this report, and have no personal interest or bias with respect to the parties involved.

4.   My compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in, or the use of this report.

5.   No one provided significant professional assistance to the individuals signing this report.


Joseph A. DeCusati, CPA, ASA, CFE


March 31, 2011

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

**Appendix D**

# JOSEPH A. DECUSATI, CPA, ASA, CFE
**MEYERS, HARRISON & PIA, LLC**

## Present Position

Joseph A. DeCusati is a senior analyst in the firm's business valuation, forensic accounting, and litigation assistance department.

## Professional Qualifications

- Practiced public accounting in the State of Connecticut since 1994
- Conducted valuation studies of entire businesses and partial business interests
- Qualified as an expert witness in many courts on business valuation, forensic, and other financial matters
- Specializes in economic damage determination studies and forensic accounting
- Manages client base that encompasses numerous industries

## Academic and Professional Credentials

Bachelor of Science in Economics, University of Connecticut

Joseph holds the following professional credentials:

- Certified Public Accountant (CPA) in the State of Connecticut
- Accredited Senior Appraiser (ASA) by the American Society of Appraisers - Business Valuation Discipline
- Certified Fraud Examiner (CFE) by the Association of Certified Fraud Examiners
- Instructor for seminars on various topics of public accounting

## Professional Affiliations

- American Institute of Certified Public Accountants
- Connecticut Society of Certified Public Accountants
- American Society of Appraisers
- Association of Certified Fraud Examiners

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

**Appendix E**

**Joseph DeCusati, CPA, ASA, CFE**
**Testimony Case List**
**January 1, 2006 through March 31, 2011**

| Date | Case Name | Description |
|------|-----------|-------------|
| 02/03/2006 | Schroeder v. Schroeder | Deposition Testimony |
| 03/24/2006 | Schroeder v. Schroeder | Court Testimony |
| 05/02/2006 | Pryor v. Pryor | Court Testimony |
| 05/08/2006 | Barbino v. Barbino | Court Testimony |
| 05/16/2006 | Barbino v. Barbino | Court Testimony |
| 07/24/2006 | Khamarji v. Khamarji | Court Testimony |
| 08/11/2006 | Sabourin v. Bingham | Deposition Testimony |
| 09/05/2006 | Arneill v. Arneill | Court Testimony |
| 10/16/2006 | Kopley v. Kopley | Court Testimony |
| 12/21/2006 | Bloomdahl, Anne v. Wilf, David | Court Testimony |
| 03/06/2007 | Hoeffner v. Orrick, Herrington & Sutcliffe | Deposition Testimony |
| 03/13/2007 | Hoeffner v. Orrick, Herrington & Sutcliffe | Deposition Testimony |
| 04/02/2007 | Wolter, Sharon et al v. Nazerali, Zulekhla | Deposition Testimony |
| 05/29/2007 | Sorrentino v. Sorrentino | Court Testimony |
| 06/13/2007 | Minney, Jessica v. Dasent, Latricia et al | Court Testimony |
| 06/29/2007 | Forensic Engineering P.C. v. SNET et al | Deposition Testimony |
| 07/10/2007 | Wolter, Sharon et al v. Nazerali, Zulekh | Court Testimony |
| 09/19/2007 | Smerling, Neil v. Smerling, Georgette | Deposition Testimony |
| 10/03/2007 | Minney, Jessica v. Dasent, Latricia et al | Court Testimony |
| 02/05/2008 | Dupont v. Dupont | Court Testimony |
| 02/06/2008 | Connecticut Machinery Sales, Inc. | Court Testimony |
| 02/07/2008 | Connecticut Machinery Sales, Inc. | Court Testimony |
| 02/13/2008 | Connecticut Machinery Sales, Inc. | Deposition Testimony |
| 02/27/2008 | Connecticut Machinery Sales, Inc. | Court Testimony |
| 04/10/2008 | Gilman, Robin Linda v. Gilman, | Court Testimony |
| 05/06/2008 | Shutts, Suzanne v. Shutts, John | Deposition Testimony |
| 07/30/2008 | Oakes-Bourret, Terry v. Miller, Jr., Donald | Deposition Testimony |
| 08/29/2008 | Companions & Homemakers, Inc. | Deposition Testimony |
| 09/18/2008 | Rippe v. Rippe | Court Testimony |
| 01/12/2009 | Kapatoes, Diane v. Kapatoes, Mark | Court Testimony |
| 01/13/2009 | McRae, Sandra v. McRae, Scott | Court Testimony |
| 01/14/2009 | McRae, Sandra v. McRae, Scott | Court Testimony |
| 01/16/2009 | Forensic Engineering P.C. v. SNET et al | Deposition Testimony |
| 03/05/2009 | D'Agostino, Joanne v. D'Agostino, Dominick | Court Testimony |
| 03/11/2009 | Lane, Susan v. Lane, John | Deposition Testimony |
| 03/17/2009 | Rippe v. Rippe | Court Testimony |
| 07/13/2009 | Bauman, Monique v. Bauman III, John | Court Testimony |
| 07/29/2009 | Richter, Elizabeth v. Richter, Alexander | Court Testimony |
| 09/02/2009 | Mascolo, Lauren E. v. Mascolo, James, A. | Court Testimony |
| 09/10/2009 | Richter, Elizabeth v. Richter, Alexander | Deposition Testimony |

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

| | | |
|---|---|---|
| 10/7/2009 | Fontaine, Adriana v. Fontaine, Kenneth A. | Court Testimony |
| 10/8/2009 | Honn, Gregory v. McCarty, Michiel, et al | Deposition Testimony |
| 10/15/2009 | D'Agostino, Joanne v. D'Agostino, Dominick | Deposition Testimony |
| 10/16/2009 | D'Agostino, Joanne v. D'Agostino, Dominick | Deposition Testimony |
| 10/23/2009 | D'Agostino, Joanne v. D'Agostino, Dominick | Deposition Testimony |
| 10/26/2009 | Mascolo, Lauren E. v. Mascolo, James, A. | Court Testimony |
| 12/1/2009 | Showah, Jayne v. Showah, Michael | Court Testimony |
| 12/9/2009 | Devore, Diane v. Rossetti, Joseph | Deposition Testimony |
| 1/19/2010 | Reynolds, Kathleen v. Reynolds, Michael | Deposition Testimony |
| 2/18/2010 | Bing Wu, et al v. Chang's Garden of Storrs, LLC et al | Deposition Testimony |
| 3/29/2010 | Wolnick, Jeanne v. Wolnick, Joseph | Court Testimony |
| 4/7/2010 | Swierad, Scott v. Swierad, Laurel | Court Testimony |
| 4/26/2010 | Horbal, M.D., Terrance v. Wilton Anesthesia, et al | Court Testimony |
| 9/3/2010 | Frydman, Cheryl v. Frydman, Perry | Court Testimony |
| 12/2/2010 | Kamath, Vasudeva v. Kamath, Sujada | Court Testimony |
| 6/3/2010 | Evans, Christopher v. Tiger Claw, Inc., et al | Deposition Testimony |
| 2/9/2011 | Schmonsees, Robert et al v. G.F. Health Products, Inc., et al | Deposition Testimony |
| 10/5/2010 | Kang, Pai-Su v. Lan, Stephen T. | Court Testimony |
| 3/25/2011 | Coppola, Theodore A. v. Coppola, Kathleen | Deposition Testimony |

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431

**Appendix F**

# JOSEPH A. DECUSATI, CPA, ASA, CFE
**List of Articles Authored in the Last Four Years**

- Determining Economic Losses in Damages Litigation, MHP Newsletter.
- How to Perform a Business Valuation on a Limited Budget in a Divorce Setting, MHP Newsletter.
- Uncovering the Truth: Understanding the Role of Forensic Accounting in Divorce, Connecticut Law Tribune.
- Burden of Proof Critical in Recent Estate and Gift Tax Case, MHP Newsletter.
- Surveying the Damages: Valuing Lost Profits and Loss of Business Presents Complexities, Connecticut Law Tribune.

MEYERS, HARRISON & PIA, LLC • CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS • ONE AUDUBON STREET • 3RD FLOOR • NEW HAVEN, CT 06511-6431