UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MUSCO PROPANE, LLP | : | NO.: 3:10-CV-1400 (JCH) |
| v. | : | |
| | : | |
| TOWN OF WOLCOTT, TOWN OF | : | |
| WOLCOTT PLANNING AND ZONING | : | |
| COMMISSION, TOWN OF WOLCOTT | : | |
| ZONING BOARD OF APPEALS, MAYOR | : | |
| THOMAS G. DUNN, DAVID KALINOWSKI, | : | |
| RAYMOND MAHONEY, SAMUEL ZOTTO, | : | |
| PETER CARMODY, CATHE SHERMAN, | : | |
| WILLIAM OLMSTEAD, STEVEN GRANT, | : | |
| BRETT MUCCINO, PAUL MAZUREK | : | |
| And JOHN JONES | : | NOVEMBER 1, 2011 |

## <u>DEFENDANTS' DISCLOSURE OF EXPERT WITNESS</u>

Pursuant to Fed. R. Civ. P. 26(a)(2) and this Court's order on pretrial deadlines, the

defendants, Town of Wolcott, Town of Wolcott Planning and Zoning Commission, Town of

Wolcott Zoning Board of Appeals, Mayor Thomas G. Dunn, David Kalinowski, Raymond

Mahoney, Samuel Zotto, Peter Carmody, Cathe Sherman, William [Billy] Olmstead, Steven

Grant, Brett Muccino, Paul Mazurek and John Jones, hereby disclose the following expert

witness who may be called to testify at trial to present evidence under Fed. R. Evid. 702, 703,

704 and/ or 705:

J. Allen Kosowsky,CPA/ABV,CVA,CFE,CFF,PFS
J. Allen Kosowsky,CPA,PC
85 Willoughby Road
Shelton, CT 06484
203.929.6641
203.926.1539 fax
jakcpa@snet.net

As required by Fed. R. Civ. P. 26(a)(2)(B), Mr. Kosowsky's report and appendices are attached hereto, which include the statement of all his opinions, reasons therefor, the data or other information considered, exhibits that may be used to summarize or support his opinions, his qualifications and publications, a list of other cases in which he has testified in the last four years and a statement of compensation.

DEFENDANTS,
TOWN OF WOLCOTT, TOWN OF
WOLCOTT PLANNING AND ZONING
COMMISSION, TOWN OF WOLCOTT
ZONING BOARD OF APPEALS, MAYOR
THOMAS G. DUNN, DAVID KALINOWSKI,
RAYMOND MAHONEY, SAMUEL ZOTTO,
PETER CARMODY, CATHE SHERMAN,
WILLIAM OLMSTEAD, STEVEN GRANT,
BRETT MUCCINO, PAUL MAZUREK and
JOHN JONES

By _____
Melinda A. Powell (ct17049)
Michael J. Rose (ct14803)
Rose Kallor, LLP
750 Main Street, Suite 606
Hartford, CT 06103
(860) 748-4660
(860) 241-1547 (Fax)
E-Mail:  mpowell@rosekallor.com
E-Mail:  mrose@rosekallor.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing was emailed and mailed this November 1, 2011.

Eric M. Grant, Esq.
Pasquale M. Salvatore, Esq.
Melissa A. Scozzafava, Esq.
Yamin & Grant, LLC
83 Bank Street
Waterbury, CT 06702

Melinda A. Powell

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------X

MUSCO PROPANE, LLP

                   Plaintiff

                                           No.  3:10-CV-1400 (JCH)

       -v-

TOWN OF WOLCOTT, TOWN OF WOLCOTT
PLANNING AND ZONING COMMISSION, TOWN
OF WOLCOTT ZONING BOARD OF APPEALS,
MAYOR THOMAS G. DUNN, DAVID KALINOWSKI,
RAYMOND MAHONEY, SAMUEL ZOTTO, PETER
CARMODY, CATHE SHERMAN, WILLIAM
OLMSTEAD, STEVEN GRANT, BRETT MUCCINO,
PAUL MAZUREK and JOHN JONES,

                   Defendants

------------------------------------------------------------X

**EXPERT REPORT OF J. ALLEN KOSOWSKY, CPA/ABV**

1

November 1, 2011

Melinda A. Powell, Esq.
Rose Kallor, LLP
750 Main Street, Suite 606
Hartford, CT  06103

**Re: MUSCO PROPANE, LLP. vs. TOWN OF WOLCOTT, et al.**
**Civil Action No.: 3:10-CV-1400 (JCH)**

Dear Attorney Powell:

You have asked me to review and comment on the Plaintiff's expert report of Joseph A. DeCusati dated March 31, 2011, rendered in connection with the above captioned matter.

References herein to Musco Propane, LLP and Musco Propane LLC will be "Musco Propane", Musco Fuel and Heating LLC will be "Musco Fuel" and references herein to the Town of Wolcott will be "Wolcott."

We do not understand why the Complaint is in the name of Musco Propane, LLP when the tax returns show the name as Musco Propane, LLC calling into question the correct legal entity.

This report is based upon my 40 years of business experience as: a CPA, Chief Operating Officer and Chief Financial Officer of private and publicly held companies, Bank Director (most recently of Webster Bank), Director and Chairman of the Board and Audit Committee of ON2 Technologies, Inc., Director of Thor Industries, Inc., and financial advisor. My Curriculum Vitae is attached as Appendix 1.

**Information Relied Upon**

We have been furnished with the Expert Reports of Mr. Joseph A. DeCusati dated March 31, 2011, and Mr. T. Michael Morrissey dated March 30, 2011, together with documents as listed on Appendix 2.

**Elements of Damages Claimed by Musco Propane According to DeCusati's Opinions**

  **A.** Damages as a result of lost profits during cease and exist period equaling $6,102.[1]
  **B.** Damages as a result of lost profits Post Cease and Desist Period through March 14, 2011 equaling $45,958.[2]
  **C.** Damages as a result of lost profits-Spot Market Purchases $15,979.[3]
  **D.** Damages as a result of Future Lost profits March 15, 2011 through December 31, 2011 equaling $227,227.[4]
  **E.** Opportunity Cost-Additional Propane tank not bought $81,025.[5]

For purposes of clarity, the lost profits claimed resulting from activities through March 14, 2011 total $68,039 which is the sum of $6,102(A), $45,958 (B) and $15,979 (C).

The lost opportunity cost from the alleged propane tank purchase was $81,025 (E).

Future losses claimed are $227,227 (D).

The sum of all losses is $376,291 and interest of $14,983 is added to arrive at a concluded loss by DeCusati of $391,274.

## Assumptions DeCusati Accepted

DeCusati names three assumptions as a basis for his opinions:

  **A.** "It is assumed that but-for the alleged actions of the Defendants beginning in or about March 2010, the Plaintiff would not have experienced economic damages relating to its business relationships.
  **B.** We have assumed that the Plaintiff is successful in proving that the Defendants have caused economic damages and that their actions were wrongful.
  **C.** The Plaintiff's assertion that there is sufficient demand in the dealer market for an additional 30,000 gallon propane tank is assumed to be accurate. We also have relied on statements made by the Connecticut State Director of the National Propane Gas Association with regard to such demand for propane in the dealer market."[6]

## Summary

Musco Propane, LLP has no damages caused by the cease and desist action. Past losses are not calculated within a degree of reasonable certainty for the $68,039 claimed.

---

[1] See DeCusati Report, p. 18, Exhibit 5.
[2] See DeCusati Report, p. 19, Exhibit 6.
[3] See DeCusati Report, p. 20, Exhibit 7.
[4] See DeCusati Report, p. 21, Exhibit 8.
[5] See DeCusati Report, p. 20.
[6] See DeCusati Report, p. 2.

3

Future losses of $227,227 are speculative and fatally flawed as the foundation calculations do not reflect all costs that might be allocated to arrive at that figure. Further, it is speculative in that it assumes future weather conditions, market conditions, competitive conditions, customer preferences and operational activities that have not been examined, analyzed or documented by DeCusati. It more closely resembles an arithmetic extrapolation analysis.

The claimed loss for the propane tank of $81,025 is in error as Musco Propane was not the purchaser of the tank; rather Musco Fuel was the named purchaser. Musco Propane was not a party to the propane tank purchase. The cost of the propane tank purchase from Sikorsky Aircraft was not the total cost. There would have been other costs for delivery including the cost of a crane at two locations—Stratford for Sikorsky and Wolcott for Musco Propane as well as transportation costs. In addition, it appears that the proposed deal for the tank fell through in 2009, not as of February 3, 2010, the date of denial by Wolcott. The other alternative of buying another used tank was not addressed by either DeCusati or Morrissey. Yet, the tank that Musco Propane uses was purchased used from a site in Alabama.[7]

### Analysis

### Musco Propane's Financial Data is Unreliable

DeCusati relies upon Musco Propane's tax returns for results of operations for the years 2006 to 2010 and concludes damages based in part on reliance on this data. See DeCusati report at page 15, Exhibit 3.[8] In addition, Randy Petroniro confirms in his deposition "A. And the way he's calculated all these figures is we've provided him with tax returns."[9]

We have been furnished with tax returns for Musco Propane for the years 2003 to 2010. Schedule 1 shows the income, costs and expenses of the company for years 2006 to 2010 and is remarkable in what is not there. For example, there are no salaries and wages for employees, yet there are payments for employee benefits without any employee payments for salaries and wages claimed. One would expect Musco Propane selling propane either at retail or wholesale to have employees to run the propane plant and drive the trucks to deliver propane to its retail customers.

We were furnished with tax returns for Musco Fuel and Heating, LLC which occupies the same premises as Musco Propane. Those tax returns show more deduction categories that one would expect, such as salaries and wages. Musco Fuel lost money in 2009 of ($535,300) and 2010 of ($395,970). When the results for both entities are combined, the overall profit is $ 8,064 for 2009 and $227,226 for 2010 (See Schedule 2). It is my opinion that Musco Propane's results do not accurately reflect all the costs that might be applied to its results to get a fair income picture so as to allow the calculation of lost profits, if any, to be calculated within a degree of reasonable certainty.

As such, as an analyst I cannot discern what variable costs might be applicable against the gross margin analyses DeCusati did to determine whether those calculation have been done with

---

[7] See Petroniro deposition, p. 85, lines 10-25, p. 86, lines 1-9.
[8] See also Appendix A of DeCusati Report—Assumptions and Limiting Conditions, items 1 and 2, for example.
[9] See Petroniro deposition, p. 90, lines 7-8.

reasonable certainty.  There is no evidence in DeCusati's report that he undertook to inquire about the lack of salary and wage expense or otherwise compare variations in expense categories during the period he reviewed of 2004 to 2010 to assess the reliability of the financial data.

A component of the alleged damages is the margin, or gross profit earned on sales of propane.

Exhibit 4 of DeCusati's report shows gross profit percentages for the years 2004 to 2010. The range in gross profit was as follows:

| Year | Revenue | Cost of Goods Sold | Gross Profit | Gross Profit % |
|------|---------|--------------------|--------------| ---------------|
| 2010 | $3,349,028 | $ 2,235,973 | $1,113,055 | 33.2% |
| 2009 | $3,122,268 | $ 2,254,547 | $ 867,721 | 27.8% |
| 2008 | $3,595,474 | $ 3,041,380 | $ 554,094 | 15.4% |
| 2007 | $2,017,973 | $ 1,688,415 | $ 329,558 | 16.3% |
| 2006 | $ 632,119 | $ 477,785 | $ 154,334 | 24.4% |
| 2005 | $ 536,230 | $ 319,768 | $ 216,462 | 40.4% |
| 2004 | $ 330,175 | $ 168,768 | $ 161,407 | 48.9% |

The variation in the gross profit percentage illustrates the wide fluctuations in profitability. DeCusati did not perform any statistical analysis, such as regression analysis, to see what the probable range of gross profit percentage might be. This is yet another reason why his conclusion as to margin is fatally flawed.

DeCusati relies on Randy Petroniro for the estimated per gallon margin of approximately $0.20 per gallon for the sale of propane to other dealers.[10]  In fact, Randy Petroniro testified at his deposition that he told DeCusati that the $0.20 is the gross margin he tries to achieve; sometimes it is more sometimes, less.[11] We did not see enough data to show what the true net margin might have been should costs such as salaries and wages, employee benefits, workman's compensation and other variable costs be considered and analyzed . We believe this is an estimate, at best, which DeCusati admits in his Appendix A as having been accepted without verification. An expert would be expected to be skeptical and evaluate such a critical representation as this margin. DeCusati's analysis is directly based on this assumed amount.

As such, it is my opinion that the financial data DeCusati relied upon is unreliable on its face and that the lack of any verification of the reasonableness of the $0.20 per gallon margin to be a fatal flaw in his opinions of damages.

---

[10] See also Appendix A of DeCusati Report—Assumptions and Limiting Conditions, item 2, for example where DeCusati accepted the information from Randy Petroniro. In particular he says: "Information supplied has been accepted as correct without further verification and we express no opinion on that information."
[11] See Petroniro deposition, page 49, lines 16-25, page 50, lines 1-10.

## Competitors Were Not Evaluated

As mentioned above, DeCusati expressly relied on assumptions as to demand from the statements of T. Michael Morrissey, another expert in this matter. Morrissey's deposition points out that his opinions are unreliable as based on speculation, sheer opinion without any underlying empirical analysis and boasting.

Morrissey states in his deposition that he had assisted or knew of a number of competitors to Musco Propane in the area around Wolcott. For example, Energy Resources by Superior in Milldale, Baribault Energy in Oakville, Sasco in Waterbury, Brooks Energy in Terryville and Tower Energy in Plainville.[12] Other suppliers that he mentions are Hocon Gas in Waterbury, Amerigas in Southington as well as Bemer's in Glastonbury.[13] Morrisey claimed to have recommended many of these suppliers to Musco Propane. One would logically assume that the wholesalers coming to Musco Propane to purchase propane for resale had the same purchasing choices. DeCusati does not address this competitive factor.

## Capacity

Morrissey states: "Q. So the companies that you would recommend to a fuel oil dealer that wanted to get into the propane business seemed to have, at a minimum, 90,000 gallons of storage? A. Correct."[14]

He goes on further to say: "Q. Is that the number that you would—that you use basically before you make a recommendation? A. That's one significant part of it, yes. The secondary storage is very important for that dealer to be vitally protected during the wintertime."[15]

Morrissey also states that another approach to storage is to work with suppliers that offer storage in the summer months for a price per gallon.[16] Nowhere in DeCusati's report is the option of storing propane at these locations examined as to the effect on the purported damages resulting from lost allocation from the pipeline. Basically, DeCusati accepted the fact that the damages are solely related to the 30,000 gallon tank denial and did not examine the alternatives to onsite storage.

Another way to add capacity is to buy transport trucks. Morrissey explains that these trucks are usually in the capacity range of 9,500 gallons to 12,000 gallons, depending on the size of the trailer.[17] A competitor, Bemers, used this method to increase storage. This alternative was not evaluated by DeCusati, either.

DeCusati does not address the reliability of the capacity claims in his opinions nor does he examine alternatives to onsite storage.

---

[12] See Morrissey deposition, June 21, 2011, p. 77-78.
[13] See Morrissey deposition, June 21, 2011, pp.78-79.
[14] See Morrissey deposition, June 21, 2011, p.81.
[15] See Morrissey deposition, June 21, 2011, p.81.
[16] See Morrissey deposition, June 21, 2011, p.115, lines 7-12.
[17] See Morrissey deposition, June 21, 2011, pp. 145-146.

### Spot Market Purchase Costs Incurred

On page 9 of Morrissey's report, he states that "During periods of allocation, Musco must turn to the more expensive spot market, to purchase gas."[18] Randy Petroniro states in his deposition he always purchases on the spot market because sometimes it is cheaper than taking propane from his contracted purchase availability. Thus, the assumption that the spot market is always more expensive is not true. Petroniro's apparent purchasing policy was to find the lowest price at any given moment in time. Therefore, reliance on this methodology to project losses is speculative and without empirical foundation.

### Storage and its Effect on Sales of Propane

As to future demand for dealer business, Morrissey stated "I don't know".[19] Petroniro, when questioned, said that the tank expansion would support both residential and wholesale customers.[20] The topic of storage and its effect on sales is not clear. Rather, Morrissey states: "A. In other words, by increasing your storage four times doesn't mean you're going to increase your customer base four times, okay? What it does mean is that you're going to improve your reliability to your existing customer base, which is what we're trying to do as an industry."[21] He goes on to say in the next segment that "He's not putting in storage to attract customers. It's not a selling tool. It's a necessity to be dependable."[22] In other words, storage is a way to sustain the current business and service reliability leaving the question of how profits might increase to many factors of competition, service, price, etc.

### Morrissey's Referral of Customers to Musco Propane

The line of questioning regarding the use of the additional 30,000 gallon tank led to the answer from Morrissey:

> "Q. But how can you account for that whole additional 30,000-gallon storage? I understand you're saying, "Well he could sell more," but how do you know that that's actually going to happen? A. Because I have deliberately not referred business to him that I would have normally referred."[23]

No market analysis or empirical evidence is presented by Morrissey to analyze customer demand. Petroniro admits in his deposition that most of his dealer customers are competing with him for residential customers. Residential customers are the key to profitability and both Morrissey and Petroniro confirm that wholesale gets crowded out by the more profitable retail customers over time.

---

[18] See Morrissey report, p. 9.
[19] See Morrissey deposition, June 21, 2011, p162. In addition there are many questions about residential demand and the idea that over time residential demand crowds out the wholesaler business. There is no analysis of the competition and the likely market for residential customers in either DeCusati's or Morrissey's reports.
[20] See Petroniro deposition, p. 101, lines 2-25.
[21] See Morrissey deposition, June 21, 2011, p.169, lines 15-21.
[22] See Morrissey deposition, June 21, 2011, p. 170, lines 5-8.
[23] See Morrissey deposition, June 21, 2011, p. 175 line25, p.176, lines 5-7.

**Hedging Did Not Take Place**

DeCusati states in his deposition that one of the owners, Randy Petroniro, told him he "hedged" propane transactions. Mr. Morrissey says the same thing.[24] Yet, there is no evidence whatsoever in the tax returns or data supplied that shows a single futures contract to support hedging. The term hedging may be misused here to really mean speculating on buying propane supplies, not locking in a margin which is what hedging is used for in my experience. Thus, reliance on Mr. Petroniro's "hedging" is endorsing what is apparently "speculating" and we all know that can mean profits as well as losses. Petroniro admits in his deposition that he did not "hedge". When asked about yearly propane needs after a series of questions relating to the way he purchases he said: "I also purchase gas myself, speculation of hedging."[25]

**Musco Propane Made More Money in 2010 Than It Did in 2009 and Mitigated Any Damages It Might Have Suffered**

DeCusati does not address the issue of mitigation of damages by the Plaintiff. It is my understanding from Counsel that the measure of loss in this case would include the Plaintiff's duty to mitigate. Nowhere in DeCusati's report or Morrissey's for that matter is the subject of mitigation addressed.

We noted, as did Mr. DeCusati in his deposition, that Musco Propane actually had its revenue increase year over year comparing 2009 and 2010, and that profits as depicted on the tax returns increased. As such, a logical conclusion is that any damages that might have been caused by the cease and desist action were mitigated. There is no loss using that measurement. Revenue was higher by $226,760 (7.26% higher than 2009) and profits as depicted on the tax return rose by $72,478 (13.33% higher) (see Schedule 1).

**DeCusati's Reliance on Morrissey Expert Report is Unfounded**

Mr. Morrissey's deposition is replete with instances where he admitted that he did not do any substantive analysis to support his opinions. Rather, when questioned he admitted that many of the opinions were based upon his views of what might have happened. For instance, he stated that the market was growing and that *he* was prepared to send customers to Musco Propane.

He said that he would not send customers to Musco Propane or any other dealer that did not have a 90,000 gallon plant.[26] Musco Propane requested zoning approval for one more 30,000 gallon tank. Thus, Mr. Morrissey, given his policy on sending customers, would not have sent customers to Musco Propane. This ignores the challenge that any such contention is speculative. In addition, there is a substantive issue of whether Morrissey was independent as an expert or more likely an advocate.

---

[24] See Morrissey deposition, June 21, 2011, pp. 112-114.
[25] See Randy Petroniro deposition, p. 38, lines 7-20.
[26] See Morrissey deposition, June 21, 2011, p. 81, lines 12-20.

On the issue of dealers not buying from Musco Propane purportedly due to the cease and desist, Morrissey when questioned said the following:

> "Q. So Randy told you that the other dealers—A. they were going south on him. His customers were going south because of this cease and desist. Q—were concerned. What about, did you talk to any of those dealers that were buying from Mr. Petroniro? A. I may have talked with one who just mentioned it in passing. Q. Who said he wasn't buying from him anymore? A. No. They were still buying from him; they weren't buying the quantity because they needed to look elsewhere because they knew what his dilemma was."[27]

No empirical evidence is offered by DeCusati or Morrissey to support the number of dealers who left or curtailed their purchases. In fact, Morrissey recommends that a dealer have several sources of supply to give flexibility.

With respect to pipeline allocations which DeCusati bases damages of $15,979 upon, he failed to know the critical fact that the pipeline that Musco Propane hoped to access with its allocations was shut down for a full heating season into 2011. In fact, during most of the damage period DeCusati sets forth of March 22, 2010 to October 13, 2010 the pipeline had been shut down. As such, any damages resulting from the allocation prong of the damage opinions is flawed as it failed to take into account this critical fact.

Morrissey states in his deposition that "And, in addition, we also had a problem: The pipeline failed last year. It failed on August 31 and it had to be shut down and it didn't reopen until February of this year. So we were without that vital asset for the entire heating season. In fact, the pipeline was shut down from Watkins Glen to Selkirk all last winter."[28]

### Morrissey—Expert or Advocate?

In fact, he was an advocate for Musco Propane in the zoning deliberations and appeared at the hearing.[29] For example: "So all of my activities, Melinda, up until June 9 (2010 added) were related to the public hearing."[30] Morrissey also did other consulting work for Musco Propane. Generally, an expert should be independent with respect to the engagement. Thus, DeCusati's reliance on Morrissey is misplaced.

### Sales Volume Was Not Affected by the Cease and Desist Actions

We analyzed the sales at retail and wholesale for 2009 and 2010. The analysis as depicted on Schedules 3, 4 and 5 shows that sales would have remained approximately the same in gallons and dollars. This further supports the mitigation argument as described earlier in this report. We have analyzed the sales of propane both retail and wholesale for the years 2009 and 2010 on a gallons and dollar basis and further attempted to determine what the annualized 2011 sales might

---

[27]See Morrissey deposition, June 21, 2011, p. 126, lines 3-18.
[28]See Morrissey deposition, June 21, 2011, pp.106-107.
[29]See Morrissey deposition, June 21, 2011, pp. 74-76.
[30]See Morrissey deposition, June 21, 2011, p. 59.

be based on past results from the November to February months.  We used these 4 months as the proxy, and applied a multiple to determine annual sales for 2011.  Based on this analysis, although total gallons are down slightly, total revenue is slightly greater than that which was achieved in 2008, 2009 and 2010.

It is worth noting that Randy Petroniro admitted in his deposition that a new propane truck was purchased "Because our business is growing and we needed to update our fleet on our residential side of deliveries."[31]

### General Matters

I reserve the right to supplement, amend or revise my report, analyses and conclusions should additional information come to light or be provided to me which in my judgment necessitates revision, supplement or amendment.  It is possible that some of the Schedules presented herein may be used in whole or in part as demonstrative exhibits at trial. Such Schedules for trial have not been prepared at this time. This report is a summary of my work and conclusions which may be supplemented at deposition or at trial.

A list of publications and treatises that I have consulted or relied upon in this matter is attached as Appendix 4.

I am independent with respect to this engagement. My firm is being compensated for the time expended on this assignment at our presently effective rates of $195-425 per hour. My current rate is $425 per hour. My compensation is not contingent on the outcome of this litigation. Our rates are adjusted from time to time.

A list of cases in which I have testified at deposition, trial or other venue in the last four years is attached as Appendix 3.

Respectfully submitted,

J. Allen Kosowsky, CPA/ABV, CVA, CFE, CFF, PFS

---

[31] See Petroniro deposition, p. 47, lines 23-25.

# SCHEDULE 1

# HISTORIC INCOME STATEMENTS

MUSCO PROPANE, LLP
Schedule 1
Historic Income Statements

## Historic Income Statements

| | Year Ending December 31, 2010 | Year Ending December 31, 2009 | Year Ending December 31, 2008 | Year Ending December 31, 2007 | Year Ending December 31, 2006 | Year Ending December 31, 2005 | Year Ending December 31, 2004 | Min | Max | Mean | Median |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | | | | |
| Revenues | 3,349,028 | 3,122,268 | 3,595,474 | 2,017,973 | 632,119 | 536,230 | 330,175 | 330,175 | 3,595,474 | 1,940,467 | 2,017,973 |
| Total Revenues | 3,349,028 | 3,122,268 | 3,595,474 | 2,017,973 | 632,119 | 536,230 | 330,175 | 330,175 | 3,595,474 | 1,940,467 | 2,017,973 |
| **Cost of Goods Sold** | | | | | | | | | | | |
| Beginning Inventory | 250,253 | 23,500 | 13,795 | 175,990 | 165,930 | 98,282 | 13,795 | 13,795 | 250,253 | 108,999 | 98,282 |
| Purchases | 2,333,616 | 2,481,300 | 3,051,085 | 1,526,220 | 487,895 | 387,416 | 232,015 | 232,015 | 3,051,085 | 1,499,928 | 1,526,220 |
| Ending Inventory | -347,896 | -250,253 | -23,500 | -13,795 | -175,990 | -165,930 | -98,282 | -347,896 | -13,795 | -153,664 | -165,930 |
| Total Cost of Goods Sold | 2,235,973 | 2,254,547 | 3,041,380 | 1,688,415 | 477,785 | 319,768 | 148,768 | 148,768 | 3,041,380 | 1,455,234 | 1,688,415 |
| **Gross Profit** | 1,113,055 | 867,721 | 554,094 | 329,558 | 154,334 | 216,462 | 181,407 | 154,334 | 1,113,055 | 485,233 | 329,558 |
| **Operating Expenses** | | | | | | | | | | | |
| Repairs & Maintenance | 8,262 | 12,230 | 1,775 | 16,117 | 3,350 | 332 | 42 | 42 | 16,117 | 6,015 | 3,350 |
| Rent | 4,500 | 13,500 | 20,000 | 20,000 | 6,250 | 19,250 | 18,000 | 4,500 | 20,000 | 14,500 | 18,000 |
| Taxes and Licenses | 9,720 | 4,478 | 4,662 | 1,297 | 1,777 | 2,011 | 2,216 | 1,297 | 9,720 | 3,709 | 2,216 |
| Professional Fees | 115,602 | 11,730 | 2,458 | 330 | 2,410 | 825 | 525 | 330 | 115,602 | 19,126 | 2,410 |
| Advertising and Promotion | 48,950 | 53,878 | 59,194 | 35,853 | 27,819 | 20,229 | 17,617 | 17,617 | 59,194 | 37,649 | 35,853 |
| Bank Charges | 1,132 | 307 | 925 | 399 | 0 | 80 | 50 | 0 | 1,192 | 415 | 307 |
| Collection Costs | 2,074 | 3,483 | 968 | 290 | 0 | 0 | 41 | 0 | 3,483 | 974 | 290 |
| Dues and Subscriptions | 2,804 | 5,720 | 1,890 | 2,063 | 375 | 1,438 | 40 | 40 | 5,720 | 2,047 | 1,890 |
| General Insurance | 86,409 | 65,310 | 17,778 | 14,858 | 6,335 | 14,606 | 13,585 | 6,335 | 86,409 | 31,329 | 14,858 |
| Meals and Entertainment | 14,308 | 0 | 1,313 | 12,018 | 0 | 0 | 0 | 0 | 14,308 | 3,948 | 0 |
| Office Expenses | 12,749 | 18,681 | 36,500 | 9,818 | 5,618 | 2,478 | 0 | 0 | 36,500 | 12,263 | 9,818 |
| Printing | 364 | 84 | 1,034 | 3,505 | 2,700 | 1,158 | 0 | 0 | 3,505 | 1,264 | 1,034 |
| Telephone | 3,172 | 3,695 | 1,010 | 666 | 2,667 | 6,707 | 5,247 | 666 | 6,707 | 3,309 | 3,172 |
| Travel | 7,154 | 11,541 | 3,206 | 0 | 1,792 | 834 | 0 | 0 | 11,541 | 3,504 | 1,792 |
| Subcontracting | 13,743 | 5,126 | 6,094 | 44,131 | 69,170 | 0 | 70,731 | 0 | 70,731 | 20,856 | 13,743 |
| Automobile and Truck Expenses | 46,758 | 54,173 | 34,318 | 26,405 | 25,608 | 16,895 | 7,317 | 7,317 | 54,173 | 30,225 | 26,405 |
| Small Tools | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Filing Fees | 0 | 569 | 869 | 226 | 862 | 0 | 195 | 0 | 869 | 124 | 0 |
| GPS Tracking | 0 | 0 | 1,400 | 0 | 0 | 0 | 0 | 0 | 1,400 | 463 | 0 |
| Permits and Licenses | 7,108 | 4,838 | 1,238 | 0 | 0 | 388 | 473 | 0 | 7,378 | 3,214 | 177 |
| Materials and Supplies | 15,554 | 15,084 | 4,653 | 4,770 | 4,567 | 878 | 1,725 | 878 | 30,299 | 11,744 | 4,653 |
| Medical Expenses | 0 | 0 | 14,104 | 30,299 | 2,229 | 0 | 0 | 0 | 3,133 | 685 | 0 |
| Employee Benefits | 58,249 | 1,966 | 3,123 | 1,546 | 0 | 0 | 0 | 0 | 58,249 | 8,602 | 0 |
| Equipment Leasing and Rental | 0 | 615 | 0 | 906 | 2,757 | 0 | 1,067 | 0 | 2,757 | 692 | 406 |
| Freight and Delivery | 18,473 | 8,956 | 0 | 594 | 9,667 | 0 | 0 | 0 | 18,473 | 5,384 | 594 |
| Utilities | 623 | 4,212 | 0 | 0 | 0 | 0 | 0 | 0 | 4,212 | 691 | 0 |
| Bank Expenses | 0 | 2,515 | 0 | 0 | 0 | 0 | 1,059 | 0 | 6,660 | 1,533 | 500 |
| Unscheduled Expenses | 6,660 | 0 | 0 | 500 | 0 | 0 | 0 | 0 | 30,000 | 4,286 | 0 |
| Seminars | 0 | 0 | 30,000 | 30,000 | 0 | 0 | 350 | 0 | 350 | 58 | 0 |
| Depreciation and Amortization | 11,573 | 20,981 | 0 | 0 | 0 | 48,695 | 26,512 | 11,573 | 48,695 | 28,190 | 26,512 |
| **Total Operating Expenses** | 496,671 | 333,672 | 276,634 | 46,496 | 15,126 | 166,751 | 166,251 | 166,251 | 496,671 | 266,359 | 266,226 |
| **Operating Profit** | 616,384 | 544,099 | 307,868 | 27,061 | 32,374 | 10,424 | -5,344 | -5,344 | 616,384 | 218,974 | 32,374 |
| **Other Income (Expenses)** | | | | | | | | | | | |
| Interest Income | 0 | 0 | 0 | 5 | 5 | 5 | 0 | 0 | 5 | 1 | 0 |
| Charitable Contributions | -200 | 0 | 0 | 226 | 0 | 0 | -200 | -200 | 0 | -29 | 0 |
| Interest Expense | -342 | -685 | -11,285 | -7,230 | -6,580 | -4,408 | -3,494 | -11,285 | -342 | -4,861 | -4,408 |
| Total Other Income (Expense) | -542 | -685 | -11,285 | -7,210 | -6,580 | -4,403 | -3,494 | -11,285 | -542 | -4,888 | -4,403 |
| **Income Before Taxes** | 615,842 | 543,364 | 296,583 | 19,831 | 25,794 | 6,021 | -8,838 | -8,838 | 615,842 | 214,085 | 25,794 |
| Income Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | | |
| **Net Income (Loss)** | 615,842 | 543,364 | 296,583 | 19,831 | 25,794 | 6,021 | -8,838 | -8,838 | 615,842 | 214,085 | 25,794 |

# SCHEDULE 2

## Musco Propane LLP
## Musco Fuel and Heating LLC
## Summary Financial Data
## 2009-2010

**SCHEDULE      2**

Schedule 2

Musco Propane LLP
Musco Fuel and Heating LLC
Summary Financial Data
2009-2010
Source:  Forms 1065

|  | Musco Propane LLC | | Musco Fuel and Heating LLC | |
|---|---|---|---|---|
|  | **2009** | **2010** | **2009** | **2010** |
| Revenues | $ 3,124,297 | $ 3,352,702 | $ 2,505,406 | $ 2,396,282 |
| Less: Returns | $ (2,029) | $ (3,674) | $ (8,438) | $ (1,805) |
| **Net Revenue** | **$ 3,122,268** | **$ 3,349,028** | **$ 2,496,968** | **$ 2,394,477** |
| Cost of Goods Sold | $ 2,254,547 | $ 2,235,973 | $ 2,200,653 | $ 2,051,468 |
| Other Income | $ - | $ - | $ - | $ 1,588 |
| **Gross Profit** | **$ 867,721** | **$ 1,113,055** | **$ 296,315** | **$ 344,597** |
| *Expenses* | | | | |
| Salaries & Wages | $ - | $ - | $ 468,078 | $ 464,152 |
| Repairs & Maintenance | $ 12,230 | $ 8,262 | $ 8,192 | $ 15,537 |
| Rent | $ 13,500 | $ 4,500 | $ - | $ - |
| Taxes & Licenses | $ 4,478 | $ 9,720 | $ 62,366 | $ 59,849 |
| Interest | $ 685 | $ 342 | $ 577 | $ 49 |
| Depreciation | $ 20,981 | $ 11,573 | $ - | $ - |
| Employee Benefit Programs | $ - | $ - | $ 86,866 | $ 6,530 |
| *Other Deductions* | | | | |
| Accounting | $ 801 | $ - | $ 17,058 | $ 6,340 |
| Advertising | $ 53,878 | $ 48,950 | $ 7,303 | $ 8,225 |
| Bank Charges | $ 307 | $ 215 | $ 213 | $ 155 |
| Credit & Collection Costs | $ 3,483 | $ 2,074 | $ 8,490 | $ 4,169 |
| Delivery | $ - | $ 160 | $ - | $ - |
| Dues & Subscriptions | $ 5,720 | $ 2,804 | $ 100 | $ - |
| Insurance | $ 65,310 | $ 86,809 | $ 7,525 | $ - |
| Legal & Professional | $ 10,929 | $ 115,602 | $ 3,056 | $ - |
| Office Expenses | $ 18,626 | $ 12,749 | $ - | $ - |
| Printing | $ 84 | $ 364 | $ - | $ - |
| Telephone | $ 2,878 | $ 2,431 | $ 29,594 | $ 32,546 |
| Travel | $ 11,541 | $ 14,308 | $ 1,250 | $ 1,387 |
| Gas & Auto | $ 52,179 | $ 44,677 | $ 53,199 | $ 56,980 |
| Utilities | $ 4,212 | $ 623 | $ 10,972 | $ 10,099 |
| Tank Replacement | $ 2,515 | $ 6,660 | $ - | $ - |
| Subs | $ 5,126 | $ 13,743 | $ 1,806 | $ - |
| ANS Service | $ 817 | $ 741 | $ - | $ 1,631 |

Schedule 2

Musco Propane LLP
Musco Fuel and Heating LLC
Summary Financial Data
2009-2010
Source:  Forms 1065

| | Musco Propane LLC | | Musco Fuel and Heating LLC | |
|---|---|---|---|---|
| | **2009** | **2010** | **2009** | **2010** |
| Rentals | $ 615 | $ - | $ - | $ - |
| Filing Fees | $ 569 | $ 977 | $ 526 | $ 1,429 |
| Freight | $ 8,956 | $ 18,313 | $ - | $ - |
| Gifts | $ 55 | $ - | $ - | $ - |
| Supplies | $ 15,084 | $ 6,117 | $ 1,344 | $ 19,250 |
| EE Benefits | $ 1,966 | $ - | $ - | $ - |
| Permits | $ 4,838 | $ 7,378 | $ - | $ 576 |
| Registrations | $ 1,994 | $ 2,081 | $ - | $ - |
| Health Insurance | $ - | $ 58,249 | $ - | $ - |
| Materials | $ - | $ 9,437 | $ - | $ - |
| Commissions | $ - | $ - | $ 150 | $ - |
| Computer Services | $ - | $ - | $ 16,170 | $ 130 |
| Postage | $ - | $ - | $ 12,635 | $ 13,278 |
| Security | $ - | $ - | $ 404 | $ 7,516 |
| Uniforms | $ - | $ - | $ 3,816 | $ 4,829 |
| Cleaning Service | $ - | $ - | $ 3,477 | $ 4,242 |
| Cleaning Supplies | $ - | $ - | $ 1,080 | $ 1,202 |
| Drug Tests | $ - | $ - | $ 1,583 | $ 800 |
| EFT Fees | $ - | $ - | $ 6,751 | $ 8,064 |
| Employee Med Inj | $ - | $ - | $ 2,087 | $ 210 |
| Employee Gifts | $ - | $ - | $ 2,000 | $ 644 |
| Mileage | $ - | $ - | $ 642 | $ - |
| Monitor Service | $ - | $ - | $ 6,835 | $ - |
| MV Reg | $ - | $ - | $ 1,541 | $ 836 |
| Sat Service | $ - | $ - | $ 2,440 | $ 2,639 |
| Refuse | $ - | $ - | $ 1,489 | $ 1,187 |
| Pagers | $ - | $ - | $ - | $ 1,116 |
| Medical | $ - | $ - | $ - | $ 4,970 |
| | | | | |
| Total Other Deductions | $ 272,483 | $ 455,462 | $ 205,536 | $ 194,450 |
| | | | | |
| **Total Expenses** | **$ 324,357** | **$ 489,859** | **$ 831,615** | **$ 740,567** |
| | | | | |
| **Net Income** | **$ 543,364** | **$ 623,196** | **$ (535,300)** | **$ (395,970)** |

# SCHEDULE 3

# SCHEDULE OF RETAIL AND WHOLESALE SALES AND GALLONS SOLD

# DECUSATI SCHEDULE 1 & 2 - COMBINED

Schedule 3

Musco Propane
Decusati Schedule 1&2- Combined
Schedule of Retailand Wholesale Sales and Gallons Sold

| Month | Retail | | Wholesale | | Combined | |
|---|---|---|---|---|---|---|
| | Gallons | Revenue | Gallons | Revenue | Gallons | Revenue |
| Jan-08 | 85,114 | $ 200,603.53 | 152,870 | $ 287,982.86 | 237,984 | $ 488,586.39 |
| Feb-08 | 72,049 | $ 176,135.17 | 121,774 | $ 217,799.69 | 193,823 | $ 393,934.86 |
| Mar-08 | 70,278 | $ 178,559.86 | 138,142 | $ 256,000.93 | 208,420 | $ 434,560.79 |
| Apr-08 | 36,427 | $ 94,627.04 | 73,256 | $ 139,769.94 | 109,683 | $ 234,396.98 |
| May-08 | 26,172 | $ 70,465.73 | 45,103 | $ 92,455.13 | 71,275 | $ 162,920.86 |
| Jun-08 | 17,128 | $ 47,962.63 | 32,567 | $ 69,784.02 | 49,695 | $ 117,746.65 |
| Jul-08 | 13,115 | $ 37,508.70 | 33,402 | $ 74,628.48 | 46,517 | $ 112,137.18 |
| Aug-08 | 13,723 | $ 37,660.11 | 31,742 | $ 63,711.05 | 45,465 | $ 101,371.16 |
| Sep-08 | 46,169 | $ 130,250.45 | 37,392 | $ 75,091.65 | 83,561 | $ 205,342.10 |
| Oct-08 | 29,907 | $ 75,103.46 | 56,649 | $ 94,336.18 | 86,556 | $ 169,439.64 |
| Nov-08 | 59,481 | $ 145,756.46 | 116,787 | $ 146,703.86 | 176,268 | $ 292,460.32 |
| Dec-08 | 85,687 | $ 204,866.14 | 180,782 | $ 213,298.96 | 266,469 | $ 418,165.10 |
| Jan-09 | 129,982 | $ 323,620.82 | 198,959 | $ 281,245.85 | 328,941 | $ 604,866.67 |
| Feb-09 | 99,678 | $ 244,416.71 | 155,031 | $ 225,468.74 | 254,709 | $ 469,885.45 |
| Mar-09 | 85,734 | $ 193,987.29 | 122,001 | $ 138,926.84 | 207,735 | $ 332,914.13 |
| Apr-09 | 39,101 | $ 83,116.44 | 73,640 | $ 80,110.30 | 112,741 | $ 163,226.74 |
| May-09 | 29,342 | $ 57,547.71 | 43,986 | $ 49,152.17 | 73,328 | $ 106,699.88 |
| Jun-09 | 19,498 | $ 38,285.11 | 55,570 | $ 70,481.73 | 75,068 | $ 108,766.84 |
| Jul-09 | 24,128 | $ 42,338.87 | 53,460 | $ 60,556.71 | 77,588 | $ 102,895.58 |
| Aug-09 | 17,533 | $ 36,057.60 | 40,842 | $ 51,503.11 | 58,375 | $ 87,560.71 |
| Sep-09 | 46,796 | $ 106,027.36 | 50,026 | $ 65,430.60 | 96,822 | $ 171,457.96 |
| Oct-09 | 42,492 | $ 98,905.83 | 68,059 | $ 94,150.22 | 110,551 | $ 193,056.05 |
| Nov-09 | 56,649 | $ 126,880.71 | 79,630 | $ 114,041.53 | 136,279 | $ 240,922.24 |
| Dec-09 | 99,042 | $ 239,592.20 | 120,168 | $ 184,106.11 | 219,210 | $ 423,698.31 |
| Jan-10 | 121,809 | $ 301,767.07 | 138,262 | $ 236,365.75 | 260,071 | $ 538,132.82 |
| Feb-10 | 115,092 | $ 289,093.89 | 135,016 | $ 227,636.29 | 250,108 | $ 516,730.18 |
| Mar-10 | 69,115 | $ 168,400.05 | 101,524 | $ 159,568.36 | 170,639 | $ 327,968.41 |
| Apr-10 | 37,164 | $ 86,704.36 | 52,391 | $ 78,610.27 | 89,555 | $ 165,314.63 |
| May-10 | 30,465 | $ 68,757.22 | 38,185 | $ 56,249.71 | 68,650 | $ 125,006.93 |
| Jun-10 | 19,577 | $ 42,240.54 | 48,866 | $ 70,788.89 | 68,443 | $ 113,029.43 |
| Jul-10 | 13,966 | $ 29,196.63 | 27,450 | $ 38,400.05 | 41,416 | $ 67,596.68 |
| Aug-10 | 19,560 | $ 41,817.35 | 47,057 | $ 68,639.41 | 66,617 | $ 110,456.76 |
| Sep-10 | 41,097 | $ 97,052.90 | 52,117 | $ 81,486.27 | 93,214 | $ 178,539.17 |
| Oct-10 | 45,814 | $ 116,599.09 | 81,608 | $ 137,298.97 | 127,422 | $ 253,898.06 |
| Nov-10 | 61,561 | $ 153,152.97 | 50,246 | $ 86,914.86 | 111,807 | $ 240,067.83 |
| Dec-10 | 126,526 | $ 326,026.49 | 91,066 | $ 159,971.83 | 217,592 | $ 485,998.32 |
| Jan-11 | 136,982 | $ 355,850.57 | 124,751 | $ 229,998.07 | 261,733 | $ 585,848.64 |
| Feb-11 | 119,203 | $ 323,976.89 | 96,218 | $ 173,761.46 | 215,421 | $ 497,738.35 |
| Mar-11 | 48,589 | $ 129,552.01 | 50,211 | $ 88,725.97 | 98,800 | $ 218,277.98 |
| **Total** | **2,251,745** | **$ 5,520,463.96** | **3,216,806** | **$ 5,041,152.82** | **5,468,551** | **$ 10,561,616.78** |

# SCHEDULE 4

# Schedule of Retail and Wholesale Sales and Gallons Sold

Schedule 4

Musco Propane
Decusati Schedules
Schedule of Retail and Wholesale Sales and Gallons Sold

| Month | Retail | | Wholesale | | Combined | |
|---|---|---|---|---|---|---|
| | Gallons | Revenue | Gallons | Revenue | Gallons | Revenue |
| Total 2008 | 555,250 | $ 1,399,499.28 | 1,020,466 | $ 1,731,562.75 | 1,575,716 | $ 3,131,062.03 |
| Total 2009 | 689,975 | $ 1,590,776.65 | 1,061,372 | $ 1,415,173.91 | 1,751,347 | $ 3,005,950.56 |
| Total 2010 | 701,746 | $ 1,720,808.56 | 863,788 | $ 1,401,930.66 | 1,565,534 | $ 3,122,739.22 |
| Nov-10 | 61,561 | $ 153,152.97 | 50,246 | $ 86,914.86 | 111,807 | $ 240,067.83 |
| Dec-10 | 126,526 | $ 326,026.49 | 91,066 | $ 159,971.83 | 217,592 | $ 485,998.32 |
| Jan-11 | 136,982 | $ 355,850.57 | 124,751 | $ 229,998.07 | 261,733 | $ 585,848.64 |
| Feb-11 | 119,203 | $ 323,976.89 | 96,218 | $ 173,761.46 | 215,421 | $ 497,738.35 |
| Mar-11 | 48,589 | $ 129,552.01 | 50,211 | $ 88,725.97 | 98,800 | $ 218,277.98 |
| **Annualized 2011*** | **777,476** | **$ 2,028,262.11** | **633,992** | **$ 1,138,630.89** | **1,411,468** | **$ 3,166,893.00** |

*1.75x multiple of Nov-Feb

# SCHEDULE 5

# Schedule of Retail and Wholesale Sales and Gallons Sold %

Schedule 5

Musco Propane
Decusati Schedule 1&2- Combinded
Schedule of Retail and Wholesale Sales and Gallons Sold %

| Month | Retail | | Wholesale | | Combined | |
|---|---|---|---|---|---|---|
| | Gallons | Revenue | Gallons | Revenue | Gallons | Revenue |
| Jan-08 | 15.3% | 14.3% | 15.0% | 16.6% | 15.1% | 15.6% |
| Feb-08 | 13.0% | 12.6% | 11.9% | 12.6% | 12.3% | 12.6% |
| Mar-08 | 12.7% | 12.8% | 13.5% | 14.8% | 13.2% | 13.9% |
| Apr-08 | 6.6% | 6.8% | 7.2% | 8.1% | 7.0% | 7.5% |
| May-08 | 4.7% | 5.0% | 4.4% | 5.3% | 4.5% | 5.2% |
| Jun-08 | 3.1% | 3.4% | 3.2% | 4.0% | 3.2% | 3.8% |
| Jul-08 | 2.4% | 2.7% | 3.3% | 4.3% | 3.0% | 3.6% |
| Aug-08 | 2.5% | 2.7% | 3.1% | 3.7% | 2.9% | 3.2% |
| Sep-08 | 8.3% | 9.3% | 3.7% | 4.3% | 5.3% | 6.6% |
| Oct-08 | 5.4% | 5.4% | 5.6% | 5.4% | 5.5% | 5.4% |
| Nov-08 | 10.7% | 10.4% | 11.4% | 8.5% | 11.2% | 9.3% |
| Dec-08 | 15.4% | 14.6% | 17.7% | 12.3% | 16.9% | 13.4% |
| Jan-09 | 18.8% | 20.3% | 18.7% | 19.9% | 18.8% | 20.1% |
| Feb-09 | 14.4% | 15.4% | 14.6% | 15.9% | 14.5% | 15.6% |
| Nov-Feb Total | | | | | 61.4% | |
| Mar-09 | 12.4% | 12.2% | 11.5% | 9.8% | 11.9% | 11.1% |
| Apr-09 | 5.7% | 5.2% | 6.9% | 5.7% | 6.4% | 5.4% |
| May-09 | 4.3% | 3.6% | 4.1% | 3.5% | 4.2% | 3.5% |
| Jun-09 | 2.8% | 2.4% | 5.2% | 5.0% | 4.3% | 3.6% |
| Jul-09 | 3.5% | 2.7% | 5.0% | 4.3% | 4.4% | 3.4% |
| Aug-09 | 2.5% | 2.3% | 3.8% | 3.6% | 3.3% | 2.9% |
| Sep-09 | 6.8% | 6.7% | 4.7% | 4.6% | 5.5% | 5.7% |
| Oct-09 | 6.2% | 6.2% | 6.4% | 6.7% | 6.3% | 6.4% |
| Nov-09 | 8.2% | 8.0% | 7.5% | 8.1% | 7.8% | 8.0% |
| Dec-09 | 14.4% | 15.1% | 11.3% | 13.0% | 12.5% | 14.1% |
| Jan-10 | 17.4% | 17.5% | 16.0% | 16.9% | 16.6% | 17.2% |
| Feb-10 | 16.4% | 16.8% | 15.6% | 16.2% | 16.0% | 16.5% |
| Nov-Feb Total | | | | | 52.9% | |
| Mar-10 | 9.8% | 9.8% | 11.8% | 11.4% | 10.9% | 10.5% |
| Apr-10 | 5.3% | 5.0% | 6.1% | 5.6% | 5.7% | 5.3% |
| May-10 | 4.3% | 4.0% | 4.4% | 4.0% | 4.4% | 4.0% |
| Jun-10 | 2.8% | 2.5% | 5.7% | 5.0% | 4.4% | 3.6% |
| Jul-10 | 2.0% | 1.7% | 3.2% | 2.7% | 2.6% | 2.2% |
| Aug-10 | 2.8% | 2.4% | 5.4% | 4.9% | 4.3% | 3.5% |
| Sep-10 | 5.9% | 5.6% | 6.0% | 5.8% | 6.0% | 5.7% |
| Oct-10 | 6.5% | 6.8% | 9.4% | 9.8% | 8.1% | 8.1% |
| Nov-10 | 8.8% | 8.9% | 5.8% | 6.2% | 7.1% | 7.7% |
| Dec-10 | 18.0% | 18.9% | 10.5% | 11.4% | 13.9% | 15.6% |
| Average of Nov-Feb sales | | | | | 57.2% | |
| Multiple | | | | | 1.75 | |

# APPENDIX  1

# CURRICULUM VITAE

J. Allen Kosowsky,CPA
85 Willoughby Road
Shelton,CT 06484
(203)929-6641--Fax (203)926-1539
email:jakcpa@snet.net website:www.forensic-cpaservices.com

**Summary:** Forensic Accountant, Certified Valuation Analyst, Certified Fraud Examiner, Accredited Business Valuator, Arbitrator-American Arbitration Association, Personal Financial Specialist, Tax Specialist, Certified in Financial Forensics.

**Experience:**

**J. Allen Kosowsky,CPA,P.C., Shelton, CT             1985-Present**
Firm concentrated on providing Litigation Support Services to Law Firms and their clients and Business and Financial Consulting covering the following service areas:

**Business and Intellectual Property Valuations**-General Business Valuations, Dissenting Shareholder and partnership matters, Marital Dissolution, Merger and Acquisition fairness opinions, Bankruptcy valuations, IRS estate and gift including family limited partnership interests. Goodwill Impairment for FASB purposes and Intellectual Property Valuation. Purchase price valuations as well.

**Forensic Accounting and Financial Analysis**-Financial investigations, embezzlements, reconstruction of assets and income streams, reconstruction of records using inferential methods, analysis of transactions, testifying at trial-civil and criminal. Developing business plans and reviewing them for reasonableness. Analyzed company performance against industry benchmarks and studies.

**Economic Damages**-Engaged to calculate damage claims for commercial disputes. Intellectual Property issues including Trade Secrets, Covenants not to Compete, Patents and Infringement Claims.

**Alternative Dispute Resolution-**Arbitrator and Mediator experienced with resolving disputes with financial, accounting and tax implications. Member American Arbitration Association-Commercial Panel, completed AAA training modules I and II.

**IRS Matters-**Civil and Criminal matters.

**Criminal Advisory Matters:** Extensive experience as _**Kovel**_ accountant and as advisor on criminal white collar fraud matters to defense team. Conducted financial investigations, interviewed witnesses, analyzed records for tax implications, developed errors against interest and other defense strategies, participated in plea negotiations, participated in presentations to U.S. Attorney's

Office, FBI and before IRS Criminal Investigative Division. Prepared financial statements for sentencing purposes, concluded civil aspects of cases when criminal proceedings were done.

**IRS Civil Matters:** Preparation of individual, partnership, LLC, Corporate (including consolidated returns) and fiduciary tax returns, claims for refunds. Representation of clients in IRS and State audits, tax disputes, offers in compromise, appeals, collection procedures. Preparation of Estate and Gift tax returns.  Preparation of Exempt Organization tax returns. Experienced with foreign tax matters, credits, transfer pricing issues. Assistance in evaluating choice of business entity. Advice on tax implications of transactions.

**CFO Services-**Engaged to serve as interim Chief Financial Officer of public and private companies. Raised capital, refinanced or initiated debt financings. Performed due diligence in connection with acquisitions, divestitures, joint ventures and other corporate strategic events. IPO, LBO, SEC experience. Venture Capital experience as a director of Venture Capital Fund. Direct Banking experience as a director of two publicly held banks-Webster Bank and predecessor Shelton Bancorp.  Acted on behalf of debtors in Bankruptcy proceedings as Accountant and financial advisor. Restructured businesses and debt to accommodate changed business circumstances. Negotiated purchase and sale of businesses, divisions, product lines, royalty arrangements, joint ventures, strategic alliances. Business process improvement and financial planning and models.

**Judicial Appointments—**State Court appointed Receiver, State Court appointed for accountings, Probate Court appointed Administrator and examiner. Federal Court appointed Receiver.

**State of Connecticut appointment:** Small Business Incubator Advisory Board

**Trustee: American International College, Springfield, MA**

**Prior Experience:**
**International Energy Corporation-**COO/CFO-1980-1985
**Ernst & Young-**Principal Tax Services 1969-1980
**Champion International Corp.-**1975

**Representative Public and Private Company Assignments:**

**Thor Industries, Inc. Elkhart, IN, March 2010-present-**Member of Board of Directors  (NYSE-THO publicly traded company).

**On2 Technologies, Inc. (Jan. 2003-Feb. 2010)-**Chairman of the Board of Directors and Chairman of the Audit Committee, Independent Financial Expert

under Sarbanes Oxley. Publicly traded video compression software technology company. Merged with Google, Inc. Feb. 2010.

**Digital Angel Trust (Apr. 2002-June 2003-**Independent Adv. Board member overseeing IBM Credit Corp. interest in underlying public Company.

**Painter Hill Venture Fund (2000-2008)-**Established venture capital fund, assist fund managers in evaluation of investments, assistance to portfolio companies on financial and accounting matters.

**FIND/SVP (Dec. 1999-April, 2000)-**Interim Chief Financial Officer, Financial Advisor to CEO.

**Memry Corporation (1997, Feb.1998-August, 1998)-**Interim Chief Financial Officer, Financial Advisor to CEO.

**Bioquest Funds-**Investment Managing Director of the Funds. Evaluated and approved over $60million in investments in Venture Capital phase of Biotech, Medical Diagnostic and Device businesses.
**Shelton Bancorp-** Vice Chairman, Director, led merger with Webster Bank.

**Webster Bank-**Former Director of $17Billion CT based bank. Active board member assisted corporate development through synergistic acquisition strategy.

## Licenses and Professional Designations:

**CPA-**State of Connecticut, 1971
**ABV-**Accredited in Business Valuation
**CFF-**Certified in Financial Forensics
**CVA-**Certified Valuation Analyst-prior member of Education Board.
        Member Quality Enhancement Committee-2000-2001
**CFE-**Certified Fraud Examiner
**PFS-**Personal Financial Specialist-AICPA designation
**CFF-**Certified in Financial Forensics-AICPA Designation
**Arbitrator-**American Arbitration Association-Commercial Panel

## Education:

**BSBA-**American International College, Springfield, MA, June, 1969
        Major: Accounting, minor: Finance.
**MBA course work-** University of Connecticut-credits towards MBA.
**Fellow,** The Wharton School, University of Pennsylvania, April 2002, Wharton Fellows Program.

3

**Other:**

Speaker at ABA seminars on Criminal Tax Fraud-1998, 1999, 2000, 2001, 2005.
Speaker on Business Valuations, White Collar Fraud and criminal tax matters.
Panelist-ABA Section of Taxation, Jan. 20, 2007: "The Ethics of Compliance:
Return Preparation, Sensitive (Eggshell) Audits and Voluntary Compliance.

**Publications in the last 10 years**

"Role of a Forensic Accountant in a Criminal Tax Proceeding", American Bar
Association, Criminal Tax Fraud Institute, October 2001.

Reviewer-Pre Publication: The Power of Impossible Thinking
By Jerry Wind and Colin Crook with Robert Gunther, Prentice Hall, 2004.

Reviewer-Pre Publication: High Powered Tax Strategies for Preserving and Increasing
Wealth. AICPA, Continuing Professional Education Course number 731650, published
2003.

The Ethics of Compliance: Return Preparation, Sensitive (Eggshell) Audits and
Voluntary Disclosure. American Bar Association, Section of Taxation, Standards of Tax
Practice Committee, January 20, 2007.

# APPENDIX  2

# DOCUMENTS RELIED UPON

**MUSCO PROPANE LLP v TOWN OF WOLCOTT, ET AL**

| Documents Relied Upon | Dates | Entity / Individual | Other Description |
|---|---|---|---|
| **30 b 6 Documents** | | | |
| Form 1065 | 2009 | DR Green Lawns, LLC | |
| Form 1065 | 2009 | Musco Fuel and Heating LLC | |
| Form 1065 | 2009 | R and D Realty | |
| Form 1065 | 2010 | DR Green Lawns, LLC | |
| Form 1065 | 2010 | Musco Fuel and Heating LLC | |
| Form 1065 | 2010 | R and D Realty | |
| Confidential Transactions | 2009 - 2011 | Musco Propane LLC | Defendant's Exhibit 1 |
| Deposition Notice | 10/26/2011 | Musco Propane LLC | Defendant's Exhibit 2 |
| Employee Earnings Summary | 2010 | Musco Fuel and Heating LLC | Defendant's Exhibit 3 |
| PI Response to Interrogatories | 10/10/2011 | Musco Propane LLC | Defendant's Exhibit 4 |
| East Cost Utilities Quote | 3/29/2011 | Morrissey Consulting LLC | Defendant's Exhibit 5 |
| Equipment Agreement | | Sikorsky to Musco Fuel | Defendant's Exhibit 6 |
| Retail Sales | 1/1/2008 - 3/16/2011 | Musco Propane LLC | Defendant's Exhibit 7 |
| Damage Determination Analysis | 3/31/2011 | Musco Propane LLC | Defendant's Exhibit 8 |
| DRS Quarterly List of Distributors | 2010 | | |
| Documents Identified in App B | | Report of Joseph A DeCusati | |
| PI Response to Interrogatories | 4/25/2011 | Musco Propane LLC | |
| **DeCusati Documents** | | | |
| East Cost Utilities Quote | 3/29/2011 | Morrissey Consulting LLC | |
| Form 1065 | 2006 | Musco Propane LLC | |
| Form 1065 | 2009 | Musco Propane LLC | |
| AmeriGas Supply History | 8/6/2009 - 3/17/2011 | Musco Propane LLC | |
| Equipment Agreement | | Sikorsky to Musco Fuel | |
| Degree Day Analysis | 2007 - 2011 | | |
| First Research Industry Analysis | | | |
| Gallon Revenue Report | 1/1/2008 - 3/16/2011 | Musco Propane LLC | |
| Morrissey Expert Report | 3/30/2011 | Musco Propane LLC | |

| Documents Relied Upon | Dates | Entity / Individual | Other Description |
|---|---|---|---|
| Morrissey Spreadsheet | | Musco Propane LLC | |
| Detail Invoice Listing | 2009 | Texas Liquids | |
| Invoice 54441 | 2/13/2009 | Texas Liquids to Musco Propane | |
| Invoice 64277 | 1/12/2010 | Texas Liquids to Musco Propane | |
| Invoice 76050 | 1/18/2011 | Texas Liquids to Musco Propane | |
| Form 1065 | 2003 | Musco Propane LLC | |
| Form 1065 | 2005 | Musco Propane LLC | |
| Form 1065 | 2006 | Musco Propane LLC | |
| Form 1065 | 2007 | Musco Propane LLC | |
| Form 1065 | 2008 | Musco Propane LLC | |
| Form 1065 - Incomplete | 2009 | Musco Propane LLC | |
| Form 1065 | 2009 | Musco Propane LLC | |
| Form 1065 | 2010 | Musco Propane LLC | |
| Form 1065 | 2004 | Musco Propane LLC | |
| Income Statement | 12/31/2010 | Musco Propane LLC | |
| Spot Pricing Purchases | 2010 | Musco Propane LLC | |
| Transaction by Code | 2011 | Musco Propane LLC | |
| Propane Consumer Protection Legislation to be Introduced in CT - CT watchdog | | | |
| Propane Consumer Protection Legislation to be Introduced in CT - 03/15/11 | | | |
| Propane Production and Distribution System Diagram | | | |
| | | | |
| **DeCusati Documents - Correspondence** | | | |
| Eric Grant to Joseph DeCusati | 3/15/2011 | | Forwarding Documents |
| Joseph DeCusati to Eric Grant | 4/1/2011 | | Cover Letter to Damages Analysis |
| Eric Grant to Joseph DeCusati | 4/1/2011 | | Cover Letter to Final Damages Analysis |
| Joseph DeCusati to M. Scozzafava | 4/7/2011 | | Cover Letter to CD File |
| Joseph DeCusati to M. Scozzafava | 4/7/2011 | | Cover Letter to CD File |
| | | | |
| **Decusati Documents - Depositions** | | | |
| Plaintiff's Expert Disclosure | 4/1/2011 | DeCusati | |
| Plaintiff's Expert Disclosure | 4/1/2011 | Morrissey | |

| Documents Relied Upon | Dates | Entity / Individual | Other Description |
|---|---|---|---|
| Plaintiff's Expert Disclosure | 4/1/2011 | Pilcy | |
| Notice of Deposition & Subpoena | 4/20/2011 | DeCusati | |
| Documents Identified in App B | | Report of Joseph A DeCusati | |
| Notice of Deposition | 4/25/2011 | DeCusati | |
| Subpoena to Testify at Civil Action | 4/20/2011 | DeCusati | |
| Notice of Deposition | 4/26/2011 | DeCusati | |

**DeCusati Documents -Emails**

**De-Cusati DocumentsAdministration**

| | | | |
|---|---|---|---|
| Additional Engagement Letter Language | 3/10/2011 | | |
| Engagement Letter - signed | 3/10/2011 | | |
| Invoice 29437 | 3/30/2011 | | |
| Invoice 29945 | 4/19/2011 | | |
| Engagement Letter - unsigned | 3/10/2011 | | |
| Business Valuation Report Flow Sheet | 12/31/2011 | | |
| Cover Letter - Engagement | 3/9/2011 | | |
| Engagement Letter | 3/10/2011 | | |
| New Client Form | | | |
| Engagement Letter - signed - no retainer | 3/14/2011 | | |
| Valuation Engagement Request Form | | | |
| Damages Report - Final | | | |

**DeCusati Documents - Quickbooks**

| | | | |
|---|---|---|---|
| QB Company File | | | |
| General Ledger 2003-03/31/11 | | | |

**DeCusati Documents - Workpapers**

| | | | |
|---|---|---|---|
| Plaintiff's damages analysis | 4/1/2011 | | |
| 246501_1 (with JAD comments - Morrissey conversation) | | | |
| Damages to be discussed with Eric | | | |

| Documents Relied Upon | Dates | Entity / Individual | Other Description |
|---|---|---|---|
| JAD Notes 03/01/11 | | | |
| JAD Notes 03/16/11 | | | |
| JAD Notes 03/21/11 Meeting | | | |
| Musco Cost Analysis | | | |
| Musco Propane Workpapers | | | |
| **E-mails** | | | |
| **October 2011 Documents** | | | |
| St. Pierre Oil Documents | | | |
| Bouchard Fuel - 1st set | | | |
| Bouchard Fuel - 2nd set | | | |
| Wesson Energy | | | |
| Marino Fuel | | | |
| Deposition | 10/26/2011 | Randy Petroniro | |
| **July 2011 Documents** | | | |
| Corrected Amended Complaint | 2/2/2011 | | |
| Plaintiff's Damages Analysis | 4/1/2011 | | |
| Plaintiff's Expert Disclosure | 4/1/2011 | DeCusati | |
| Plaintiff's Expert Disclosure | 4/1/2011 | Morrissey | |
| Plaintiff's Expert Disclosure | 4/1/2011 | Pilcy | |
| Protective Order | | | |
| **August 2011 Documents** | | | |
| Power Fuels Documents | | | |
| Quinoco Documents | | | |

# APPENDIX  3

# TABLE OF CASES

J. ALLEN KOSOWSKY, CPA, CFE, DACFE, CVA
TABLE OF CASES 2003 TO DATE
SHOWING RANGE OF SERVICES

| CASE | NATURE OF DISPUTE | TYPE | YEAR (APPROX.) | REPRESENTED | COURT OR FORUM | ROLE | Appearance |
|---|---|---|---|---|---|---|---|
| Crawford, et al v. Aristotle | Fair Value Valuation | Civil | 2011 | Plaintiff | State-Delaware | Valuation Expert | Deposition |
| SEC v. Ramadan et al | Accounting fraud | Civil | 2011 | Defendants | Federal | Accounting Expert | Disposition |
| Berman v. Stein, et al | Ponzi scheme, forensic accounting | Civil | 2011 | Plaintiff | Federal Bankruptcy | Accounting Expert | Trial |
| Wealth Management Associates v. Reiner, et al | Damages, forensic accounting | Civil | 2011 | Plaintiff | State | Damages Expert | Disposition |
| Berman v. Kalick & Leary, P.C., Malley, et al | Ponzi scheme, forensic accounting | Civil | 2011 | Plaintiff | Federal Bankruptcy | Accounting Expert | Disposition |
| Horbal v. Ratcliffe, Davies, et al | Damages | Civil | 2011 | Plaintiff | State, Superior Court | Damages Expert | Trial |
| Letso, et al v. LaMarco and Benvenuto | Damages, forensic accounting | Civil | 2011 | Defendants | State, Superior Court | Damages, forensic accounting | Deposition |
| Porricelli v. Porricelli, et al | Damages, forensic accounting | Civil | 2011 | Plaintiff | State, Superior Court | Damages, forensic accounting | Deposition |
| Ace Partners LLC v. Town of East Hartford | Damages, valuation | Civil | 2010 | Defendant | Federal | Damages Expert, Valuation Expert | Disposition |
| Dynax Corporation v. Chernguard | Trade Secrets | Civil | 2010 | Plaintiff | Federal | Damages Expert- Trial | Court |
| Analogic v. CAS Medical Systems | Damages, contract | Civil | 2010 | Defendant | Arbitration | Damages Expert | Hearing |
| Rostad v. Hirsch | Family | Civil | 2009 | Defendant | State | Accounting Expert | Hearing |
| Timex v. Advanced Watch | Damages | Civil | 2009 | Plaintiff | Federal | Damages Expert | Deposition |
| Tuchman v. Tuchman | Divorce-Valuation | Civil | 2008 | Defendant | State | Valuation Expert | Deposition |
| CPMA, et al v Healthnet | Damages | Civil | 2007 | Defendant | State | Accounting and Damages Expert | Disposition |
| CendantUSA v. E. Kirk Shelton, et al | Forensic Accounting | Civil | 2007 | Plaintiff | Federal | Forensic Accounting Expert | Hearing |
| John Doe v. Iule | Appointment of Receiver | Civil | 2007 | none | State | Receiver Candidate | Appointed Receiver by Judge |
| SEC v. Banco et al | Accounting issues, forensic accounting | Civil | 2007 | Defendants | Federal | Accounting Expert | Disposition |
| Assurance, et al v. Yakemore, et al | Damages | Civil | 2006 | Defendants | State | Accounting and Damages Expert | Disposition |
| Giannetti v. Norwalk Hospital | Damages | Civil | 2007 | Defendant | State | Accounting and Damages Expert | Trial |
| Dynax Corporation v. Chernguard | Trade Secrets | Civil | 2007 | Plaintiff | Federal | Damages Expert | Disposition |
| Kigler v. St. Luke's | Damages | Civil | 2007 | Defendant | State | Damages Expert | Trial |
| Neighborcare v. Bardovaros | Lost Profits , Trade Secrets | Civil | 2007 | Plaintiff | Federal | Damages Expert | Disposition |
| Atotech v. MacDermid | Lost Profits, Patents, Trade Secrets | Civil | 2007 | Defendant | Federal | Damages Expert | Disposition |
| Glenwood Systems, LLC v. Dr. Fuad Ramadan | Arbitration | Civil | 2007 | Arbitrator | AAA Arbitration | Arbitrator | Conducted Arbitration |
| Rollin Dairy et al v. Marcus Dairy | Business Dispute | Civil | 2007 | Plaintiff | Federal | Damages Expert | Deposition |
| Larsen v. Larsen | Divorce-Valuation | Civil | 2007 | Plaintiff | State | Valuation Expert | Deposition |
| Bourke & Matthews, et al v. Muldoons, et al | Forensic-Accounting | Civil | 2006 | Defendant | Federal | Accounting Expert | Hearings |
| Shroeder v. Shroeder | Option Valuation | Civil | 2006 | Plaintiff | State | Valuation Expert | Court and Deposition |
| Lloyds v. Cooperman | Forensic Accounting | Civil | 2005 | Defendant | State | Accounting Expert | Disposition |
| Galladay v. Galladay | Arbitration-Tax Issues | Civil | 2005 | Arbitrator | Arbitration | Arbitrator | Arbitrator |
| Brown v. Palumberi | Business Dispute | Civil | 2005 | Plaintiff | State | Accounting and Valuation Expert | Court |
| Charts v. Nationwide Insurance | Business Dispute | Civil | 2004 | Plaintiff | Federal | Damages Expert | Court |
| George M. Oakes v. eNewsRelease.com, Inc. | Business Dispute | Civil | 2004 | Defendant | State | Accounting and Damages Expert | Court |
| Estate of Elmore Wheeler | Probate Accounting | Civil | 2005 | Judge | Probate | Appointed to do an accounting | Court |
| Estate of Elmore Wheeler | Prepayment Remedy | Civil | 2005 | Plaintiff | Federal | Accounting Expert | Court |
| Lopland/Wagner Pools of Darien v. Gedney, et al | Damages, valuation | Civil | 2004 | Plaintiff | State | Financial, valuation damages expert | Disposition |
| In Re: Shell Oil Products Co. Dealer Franchisees Litigation | Damages, valuation | Civil | 2004 | Defendant | Federal | Financial, valuation damages expert | Disposition |
| MegaMillennia, Inc. and IBEX Construction, LLC | Arbitration | Civil | 2004 | Arbitrator | AAA Arbitration Panel | Arbitrator | Conducted Arbitration |
| Message Center Management v. Old Post, et al | Business, valuation | Civil | 2004 | Plaintiff | State | Financial, valuation damages expert | Disposition |
| PSG, Inc. v. SKW Real Estate Limited Partnership | Damages, Business Destruction | Civil | 2003 | Plaintiff | State | Financial, valuation damages expert | Disposition |
| Rice v. Monteleone | Divorce, Valuation | Civil | 2003 | Defendant | State | Financial, valuation damages expert | Disposition |
| Commercial Investors Management, Inc. et al v. City of New London | Valuation, Damages | Civil | 2003 | Plaintiff | Federal | Financial, valuation damages expert | Disposition |
| Task Force Management, Inc. Ch 11 DIP | Bankruptcy | Civil | 2003 | Bankrupt Estate | Bankruptcy Court | Financial Advisor | Court Appointed |
| S.B. Phillips, et al v. USF&G, et al | Damages | Civil | 2003 | Counterclaimants | Federal | Financial Expert | Deposition |
| Shaer v. Spector | Arbitration | Civil | 2003 | Arbitrator | ARBITRATION | Arbitrator | Arbitrator |
| Telstra Wholesale, LP v. Dynegy, Inc. | CONTRACT DISPUTE | Civil | 2003 | Plaintiff | Delaware Chancery Court | Financial and Tax Expert | Disposition |

# APPENDIX  4

# LIST OF PUBLICATIONS

<u>**LIST OF PUBLICATIONS AND TREATISES**</u>

American Institute of Certified Public Accountants – "Preparing Financial Models,"
    Consulting Services Practice Aid 92-6.

American Institute of Certified Public Accountants – "Providing Litigation Services,"
    Consulting Services Practice Aid 93-4.

American Institute of Certified Public Accountants – "Developing Business Plans,"
    Consulting Services Practice Aid 96-1.

American Institute of Certified Public Accountants – "Litigation Services and Applicable
    Professional Standards," Consulting Services Special Report 03-1.

American Institute of Certified Public Accountants – "Calculating Intellectual Property
    Infringement Damages,"  Business Valuation and Forensic & Litigation Services
    Section Practice Aid 06-1.

American Institute of Certified Public Accountants – "Calculating Lost Profits,"
    Business Valuation and Forensic & Litigation Services Section Practice Aid 06-4.


## <u>Books</u>

Dunn, Robert L. <u>Recovery of Damages for Lost Profits, Vol. 1,</u>  6th ed. Westport:
    Lawpress Corporation, 2005.

Dunn, Robert L. <u>Recovery of Damages for Lost Profits, Vol. 2,</u>  6th ed. Westport:
    Lawpress Corporation, 2005.

Gaughan, Patrick A.  <u>Measuring Business Interruption Losses and Other Commercial</u>
    <u>Damages</u>.  New Jersey: John Wiley & Sons, Inc., 2004.

Glick, Mark A., Lara A. Reymann, Richard Hoffman. <u>Intellectual Property Damages</u>
    <u>Guidelines and Analysis</u>.  New Jersey: John Wiley & Sons, Inc., 2003.

Hitchner, James R.  <u>Financial Valuation, Applications and Models</u>. New Jersey: John
    Wiley & Sons, Inc., 2003.

Parr, Russell L.  <u>Intellectual Property Infringement Damages: A Litigation Support</u>
    <u>Handbook</u>, 2nd ed. New York: John Wiley & Sons, Inc., 1999.

Parr, Russell L., Smith, Gordon V.  <u>Intellectual Property:  Valuation, Exploitation and</u>
    <u>Infringement Damages</u>. New Jersey: John Wiley & Sons, Inc., 2005.

Pratt, Shannon P., Robert F. Reilly and Robert P. Schweihs. Valuing a Business: The Analysis and Appraisal of Closely Held Companies. New York: McGraw-Hill, 2000.

Pratt, Shannon P., Robert F. Reilly and Robert P. Schweihs. Valuing Small Businesses And Professional Practices, 3rd ed.  New York: McGraw Hill Companies, Inc. 1998.

Reilly, Robert F. and Robert P. Schweihs.  The Handbook of Business Valuation And Intellectual Property Analysis. New York: McGraw-Hill, 2004.

Schwarzkopf, Leigh Ann and Lynn Scott.  Licensing Metrics. How to Measure The Success Of Consumer Products Licensing Programs. New York: EPM Communications, Inc., 2008.

Slottje, Daniel.  Economic Damages in Intellectual Property. New Jersey: John Wiley & Sons, Inc., 2006.

Trugman, Gary R.  Understanding Business Valuation: A Practical Guide to Valuing Small to Medium-Sized Businesses, 2nd ed.  New York: American Institute of Certified Public Accountants, 2002.

Weil, Roman L., Peter B. Frank, Christian W. Hughes, Michael J. Wagner.  Litigation Services Handbook, The Role of the Financial Expert, 4th ed.  New Jersey: John Wiley & Sons, Inc. 2007.