```
                    121411tomariola.txt
                                                          1
    1              UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
    2

    3    MUSCO PROPANE, LLP           CIVIL ACTION NO.

    4                                 3:10-CV-1400 (JCH)

    5       VS.                       DECEMBER 14, 2011

    6
         TOWN OF WOLCOTT, ET AL
    7

    8

    9             DEPOSITION OF: TOM ARIOLA

   10

   11    APPEARANCES:

   12    Attorneys for the Plaintiff:

   13       YAMIN & GRANT, LLC
              83 Bank Street
   14         Waterbury, Connecticut 06702
              (203) 574-5175
   15       BY: ERIC M. GRANT, ESQUIRE

   16    Attorneys for the Defendant:

   17       ROSE KALLOR, LLP
              750 Main Street
   18         Hartford, Connecticut 06103
              (860) 748-4660
   19       BY: MELINDA A. POWELL, ATTORNEY AT LAW

   20    Also present:  Randy Petroniro

   21
                         Wendy J. Leard
   22               Registered Merit Reporter
                         CSR # 00039
   23
            NIZIANKIEWICZ & MILLER REPORTING SERVICES
   24                  972 Tolland Street
            East Hartford, Connecticut 06108-1533
   25                    (860) 291-9191
                                                          2

    1        . . . Deposition of TOM ARIOLA, taken on

    2    behalf of the defendants in the hereinbefore

    3    entitled action, pursuant to the Federal Rules of

    4    Civil Procedure, before Wendy J. Leard, RMR, duly

    5    qualified Notary Public in and for the State of

                         Page 1
```

121411tomariola.txt

6  Connecticut, held at the law offices of ROSE
7  KALLOR, LLP, 750 Main Street, Hartford,
8  Connecticut, commencing at 10:04 a.m., on
9  Wednesday, December 14, 2011.
10
11       S T I P U L A T I O N S
12
13     It is hereby stipulated and agreed by and
14  among counsel for the respective parties that all
15  formalities in connection with the taking of this
16  deposition, including time, place, sufficiency of
17  notice and the authority of the officer before
18  whom it is being taken may be and are hereby
19  waived.
20
21     It is further stipulated and agreed that
22  objections, other than as to form, are reserved to
23  the time of trial and that the reading and signing
24  of the deposition is not waived.
25
                                              3
1     It is further stipulated and agreed
2   that the proof of the qualifications of the
3  notary public before whom the deposition is being
4  taken is hereby waived.
5
6     TOM ARIOLA, Deponent, having first been duly
7  sworn, deposes and states as follows:
8
9           DIRECT EXAMINATION
10  BY MS. POWELL:
11    Q    Hi, Mr. Ariola.

121411tomariola.txt

```
 5   director?
 6      A     Ten years.
 7      Q     And then what did you do?
 8      A     Then I had my own accounting firm, small
 9   accounting practice.
10      Q     Okay.  Why did you leave Levitsky?
11      A     To take the job with the City.
12      Q     Okay.  And why did you leave the City?
13      A     I resigned with the situation with the
14   former mayor, the problems; and, subsequently, I
15   had to go to federal court over -- the exact
16   charge was eliciting the acceptance of a bribe.
17      Q     Involving the mayor?
18      A     Yes.
19      Q     And you were called as a witness?
20      A     I was charged with that.
21      Q     Oh, you were charged with it.
22      A     Yes.
23      Q     Okay.  And was that a civil or a criminal
24   matter?
25      A     Criminal.
                                                    8
 1      Q     Did it go to trial?
 2      A     No.
 3      Q     Did you plead out?
 4      A     Yes.
 5      Q     And what was your plea?
 6      A     Guilty.
 7      Q     Did you serve any time?
 8      A     Four months house arrest.
 9      Q     Okay.  And were you represented in that
10   matter by an attorney?
```

121411tomariola.txt

```
11   A    Yes, I was.
12   Q    And who represented you?
13   A    Silverstein.
14   Q    Silverstein?
15   A    Silverstein & Osach in Hartford.
16        Not Hartford. They're in New Haven.
17   Q    And do you know what the maximum penalty
18 you could have gotten for that crime was?
19   A    I don't remember.
20   Q    And when was that plea?
21   A    September -- I want to say 2010, 2011.
22        Let's see. We're in '11.
23        September 2009, I think.  September 1,
24 2009.
25   Q    September 1, 2009.  Okay.
                                                    9
 1   A    Yes.
 2   Q    And so when did you complete your
 3 punishment?
 4   A    January 8, 2010.
 5   Q    All right.  Have you ever been convicted
 6 of a felony?
 7   A    Yes.
 8   Q    When?
 9   A    That was it.
10   Q    Okay.  Have you been convicted of any
11 other felonies?
12   A    Never.
13   Q    Who did you work -- were you a partner at
14 Levitsky?
15   A    No. I was just a senior accountant.
16   Q    Okay.  And who did you report to?
```

Page 7

121411tomariola.txt

23   Dr. Green Lawns, and R & D Realty.
24   Q    And how long have you been the bookkeeper
25   for Dr. Green Lawns?

                                                    32

1    A    It all started the same time; once I
2    became the bookkeeper, I was the bookkeeper for
3    all companies.
4    Q    Okay. Now, my understanding is that the
5    salaries of the employees are shown on Musco
6    Fuel's tax returns; is that right?
7    A    Yes. They have been that way since the
8    beginning of operations.
9    Q    Why is that?
10   A    Insurance, one FICA number, one number.
11        It was set up that way from the beginning;
12   we just keep it. It's easier, keep it consistent.
13   Q    And what do you mean it was set up that
14   way for insurance purposes?
15   A    Well, it was set up -- it's easier for us
16   to give reports and everything, you know, for when
17   we have audits and stuff of that nature.
18        Just -- I would say the whole thing is
19   set up for easiness, you know, easier for us to do
20   what we have to do.
21        It's been that way before I got there and
22   probably will be that way long after I'm gone.
23   Q    Okay. So did you make the decision to do
24   that?
25   A    No.

                                                    33

1    Q    Do you know who Musco's accountant was
2    before you?

```
                    121411tomariola.txt
 2     A     It was just a copy.
 3     Q     -- it was --
 4           Okay.
 5     A     It wasn't whited out.
 6           You know what I mean?
 7           It's the same original return that was
 8    originally signed.  All returns were signed when
 9    they were sent in.
10     Q     Okay.  Got it.
11           And so what I'm getting is if something
12    said it was self-prepared --
13     A     It wasn't self-prepared.
14     Q     It wasn't.  Okay.
15           Just so we get it clear, I'm going to give
16    you the one that I was talking about.
17               (Defendant's Exhibit 7, marked for
18                identification-described in index)
19    BY MS. POWELL:
20     Q     Can you tell me what number 7 is?
21     A     Yeah, a copy that was generated and then
22    just faxed.  It's just a copy off the machine that
23    was generated and faxed.
24     Q     Okay.  So, again, we just made the point;
25    it said "self-prepared" on Defendant's 7?
                                                     39
 1     A     The copy, right.  Not the original filed
 2    with the government.
 3     Q     Got it.
 4           Now, do employees do work for Musco
 5    Propane?
 6     A     Yes.
 7     Q     And do you know which employees do work
                         Page 31
```

121411tomariola.txt
12  that has a share -- gets a contribution from
13  another company, maybe an in-kind contribution;
14  whatever the case is, the other company is paying
15  its portion of the salaries.
16       You can say that, but that's -- I think
17  that's relevant to your case, but that's -- as far
18  as we do it, that's our position.
19   Q   And can you cite me any accounting rule
20  that allows you to do that?
21   A   I don't think you can cite me one that
22  says I can't.
23   Q   Well, wouldn't the general rules --
24   A   Because they are all partnership returns
25  and they get clumped together under return taxes

46

1   paid on the whole.
2        You could have 150 partnerships; in the
3   end, the net of the partnerships will be taxed.
4    Q   Okay. So the reasoning behind not putting
5   salaries on Musco Propane's returns is because
6   you're looking at all the entities in the
7   aggregate?
8    A   I'm looking at -- no.
9        I'm saying that it's -- it would be hard
10  for me to figure out what fraction of time is
11  spent on Musco Propane as opposed to Musco Fuel
12  and the percentage of that person's labor
13  specifically -- the cost of doing that wouldn't be
14  worth the point of moving it over there.
15   Q   Okay. Well, on Musco Fuel's tax return,
16  you'd agree that 100 percent of the salaries are
17  on there, right?

Page 37

```
                          121411tomariola.txt
24       A    Dr. Green bills will have a Green.
25       Q    Dr. Green.  I thought you were talking
                                                               48
 1   about a color on the bill.
 2       A    No.
 3            So Musco Propane will come in.  If they
 4   make a mistake, that's probably the only time I
 5   would say to my boss, "This one here has got both
 6   companies.  What was it for?
 7            "It's this."
 8            And if you look down, you'll see
 9   "Propane," or something.
10            Usually they describe it pretty good so
11   you know what company it is.
12       Q    Okay.  So, like, on the account number, it
13   has the customer?
14       A    Right.
15       Q    And that's how you distinguish it?
16       A    Right.
17       Q    Whatever is on the bill?
18       A    Right, how it's billed.
19       Q    Okay.  All right.
20            I'm just going to take a quick break, and
21   then we'll be close to done.
22                  (Whereupon a recess was
23                   held off the record.)
24            MS. POWELL:  Back on the record.
25
                                                               49
 1   BY MS. POWELL:
 2       Q    Do you recall whether you provided any of
 3   Musco Fuel's tax returns to Mr. DeCusati or the
 4   expert witnesses?
                               Page 39
```

121411tomariola.txt

5    A    I would say no.

6    Q    Okay. Did you make any choices with
7  regard to what to provide, or was it more the
8  situation where they were asking you for specific
9  information?

10    A    I don't even recall if I've seen anything
11  that said what they requested.

12        I would say somebody would say to me,
13  "Tom, we need this," you know, "show us where it
14  is here."

15        We'd go in the file and pull it out and we
16  would fax it. The returns, they have them all in
17  the safe.

18    Q    Okay. And when you say "pull it out," are
19  you talking about off the computer?

20    A    No. It could have been a hard copy to
21  copy if we had a hard copy.

22        And if we didn't, it would be something
23  off the computer.

24        I either did it or I called one of the
25  ladies there and told them how to do it.

50

1    Q    I got confused before.

2        I thought there weren't any hard copies of
3  financial information?

4    A    In the safe is the same copy that would be
5  in the computer.

6        It could be a tax return.

7        You know what I mean?

8        Usually we don't rely on that, because
9  we'd never find it, so most of the time we just
10  pull it right off.

Page 40

```
                        121411tomariola.txt
 3          I, TOM ARIOLA, have read the foregoing
 4    transcript of the testimony given and it is true
 5    and accurate to the best of my knowledge as
 6    originally transcribed and/or noted on the
 7    attached Errata Sheet.
 8
 9                    _____
10                           TOM ARIOLA
11
12          Subscribed to and sworn to before me on
13    this ____ day of _____ , 2012.
14
15                    _____
16                           Notary Public
17    My Commission expires:
18    _____
19
      3:10-CV-1400 (JCH)
20
21    MUSCO PROPANE, LLP
22    -vs-
23    TOWN OF WOLCOTT, ET AL
24    TOM ARIOLA -  DECEMBER 14, 2011
25    WJL
                                                       55
 1    STATE OF CONNECTICUT
 2    COUNTY OF TOLLAND
 3        I, Wendy J. Leard, a Notary Public for the
 4    State of Connecticut, do hereby certify that the
 5    deposition of TOM ARIOLA, a witness, was taken
 6    before me pursuant to the Federal Rules of Civil
 7    Procedure, at the law offices of ROSE KALLOR, LLP,
 8    750 Main Street, Hartford, Connecticut, commencing
                            Page 44
```

```
                       121411tomariola.txt
 9    at 10:04 a.m., on Wednesday, December 14, 2011.
10         I further certify that the deponent was first
11    sworn by me to tell the truth, the whole truth,
12    and nothing but the truth, and was examined by
13    counsel, and his testimony stenographically
14    reported by me and subsequently transcribed as
15    hereinbefore appears.
16         I further certify that I am not related to
17    the parties hereto or their counsel, and that I am
18    not in any way interested in the event of said
19    cause.
20         Dated at Somers, Connecticut, this 18th day
21    of December, 2011.
22
                                      Wendy J. Leard
23                                    Notary Public
24
25    My Commission Expires May 31, 2012
```